# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP - 6 2002

DAVID J. MALAND, CLERK
BY
DEPUTY

|  |  |
|---|---|
| **JOHN WILLIAM KING,** Petitioner | ) ) ) ) |
| v. | ) ) |
| **JANIE COCKRELL, Director** **Institutional Division,** **Texas Department of** **Criminal Justice** Respondent | ) ) ) ) ) ) ) |

Civil Action No. 1:01 CV-435
Judge Richard A. Schell

# PETITION FOR WRIT OF HABEAS CORPUS

## VOLUME 1
## PAGES 1-184

**A. RICHARD ELLIS**
Texas Bar No. 06560400
75 Magee Ave.
Mill Valley, CA 94941

(415) 389-6771
FAX: (415) 389-0251
Counsel for Petitioner

30 (1 of 2)

**ATTENTION**
Attachments Not Bound
( 4 volumes of Exhibits )

## TABLE OF CONTENTS

Table of Contents....................................................................................................i

Table of Authorities.............................................................................................vi

PETITION FOR WRIT OF HABEAS CORPUS........................................................1

I.  JURISDICTION AND PROCEDURAL HISTORY..........................................2

II.  FACTUAL BACKGROUND.................................................................................4

    A) Pre-trial..........................................................................................4
    B) Jury Selection...............................................................................8
    C) Trial..............................................................................................10
        i) Opening statement by the State.........................................11
        ii) The State's case at guilt/innocence....................................13
        iii) The defense case at guilt/innocence..................................47
        iv) Guilt/innocence arguments................................................49
        v) The punishment phase.......................................................52

III.  MEANING AND STANDARD OF REVIEW UNDER THE AEDPA..............66

    A) *Williams v. Taylor*........................................................................67
    B) *Drinkard* overruled....................................................................69
    C) The Supreme Court granted relief in *Williams*........................70
    D) Section 2254(d)............................................................................58
    E) Qualifying state court decisions.................................................76
    F) The applicability of amended sec. 2254(d) to King's case..........79

IV.  CLAIMS

CLAIM I: MR KING WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
THROUGHOUT THE COURSE OF HIS TRIAL AND APPEAL........................101

    General Standards and Law...........................................................101

    Claim I(a): Counsel Presented and allowed false and misleading framework for
    the first special issue of "future dangerousness"...........................121

Claim I(b): Counsel were ineffective in motion for change of venue.............133
Claim I(c): Failure of defense counsel to make an opening argument...........136
Claim I(d): Counsel gave totally ineffective and harmful final arguments...136
Claim I(e): Failure to present a viable case at punishment phase.................138
Claim I(f): Failure to object to unqualified and erroneous testimony on tattoos by a local police officer.......................................................................................139
Claim I(g): Failure to object to unqualified and inaccurate testimony of "gang expert" William Knox.......................................................................................143
Claim I(h): Failure to object to prosecutorial misconduct and error.............145
Claim I(i): Failure to investigate and present mental health information.....148
Claim I(j): Failure to challenge testimony of coroner Dr. Brown.................150
Claim I(k): Failure of counsel to adequately urge their motion to withdraw 151
Claim I(l): Failure to object to Dr. Gripon's testimony....................................153
Claim I(m): Cumulative error..........................................................................154

**CLAIM II: TRIAL COUNSEL'S DEFICIENT PERFORMANCE IN NOT PRESENTING A VIABLE DEFENSE SHOWING PETITIONER'S ACTUAL INNOCENCE CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL AND DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**.................................................................................156

**CLAIM III: THE TRIAL COURT VIOLATED PETITIONER'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS WHEN IT DENIED HIS REQUEST FOR DIFFERENT TRIAL COUNSEL AND DENIED TRIAL COUNSEL'S MOTION TO WITHDRAW**................................................................171

**CLAIM IV: PETITIONER'S RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS WERE VIOLATED BY THE ADMISSION OF EVIDENCE DURING BOTH PHASES OF HIS TRIAL, RELATING TO HIS ABSTRACT BELIEFS WITHOUT A SUFFICIENT "NEXUS" TO THE CRIME, CONTRARY TO *DAWSON V. DELAWARE.***................................................................................174

**CLAIM V: THE ADMISSION OF UNRELIABLE AND UNSCIENTIFIC TESTIMONY OF "FUTURE DANGEROUSNESS" VIOLATED PETITIONER'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**...............................................................185

**CLAIM VI: THE TEXAS "SPECIAL ISSUES" DEPRIVED PETITIONER OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO HAVE A JURY**

DETERMINE, *BEYOND A REASONABLE DOUBT*, EVERY FACT THAT OPERATES TO INCREASE THE PUNISHMENT AUTHORIZED, AS REQUIRED BY *APPRENDI V. NEW JERSEY* AND *RING V. ARIZONA*......................................206

**CLAIM VII:** THE STATE'S INTRODUCTION OF EVIDENCE OF UNCONVICTED OFFENSES AND THE SENTENCER'S CONSIDERATION OF THAT EVIDENCE VIOLATED MR. KING'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS AND WAS CONTRARY TO THE HOLDINGS IN *APPRENDI* AND *RING*...............................................................................................234

**CLAIM VIII:** DUE TO PERVASIVE AND EXTENSIVE PRE-TRIAL PUBLICITY, MR. KING'S TRIAL WAS CONDUCTED IN A PREJUDICIAL ATMOSPHERE THAT MADE THE TRIAL PROCESS INHERENTLY UNFAIR AND DEPRIVED HIM OF DUE PROCESS OF LAW.........................................................245

**CLAIM IX:** THE TOTALITY OF THE PREJUDICIAL CIRCUMSTANCES AND ATMOSPHERE SURROUNDING THE TRIAL  DEPRIVED MR. KING OF HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS AND VIOLATED HIS RIGHT TO DUE PROCESS OF LAW.........................................252

**CLAIM X:** MR. KING  WAS DEPRIVED OF HIS RIGHTS TO A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS WHEN THE TRIAL COURT REFUSED TO GRANT HIS MOTION FOR A CHANGE OF VENUE DESPITE OVERWHELMING PREJUDICE AGAINST HIM IN JASPER...............................................274

**CLAIM XI:** MR. KING  WAS DENIED MEANINGFUL ACCESS TO THE COURTS AND DUE PROCESS OF LAW IN STATE POST-CONVICTION PROCEEDINGS AND WAS DENIED COMPETENT COUNSEL FOR HIS INITIAL STATE HABEAS PROCEEDINGS BY UNCONSTITUTIONAL STATE COURT ACTION...........288

**CLAIM XII:** PETITIONER'S  ATTORNEYS WERE INEFFECTIVE IN NOT OBTAINING AND/OR USING  A CONFIDENTIAL DEFENSE PSYCHIATRIC EXPERT UNDER *AKE V. OKLAHOMA* TO EXAMINE THEIR CLIENT FOR PURPOSES OF BOTH THE GUILT/INNOCENCE AND PUNISHMENT PHASES OF THE TRIAL.............................................................................315

**CLAIM XIII:** PETITIONER'S JURY WAS FUNDAMENTALLY BIASED AGAINST HIM DUE TO ERRORS OF THE TRIAL COURT IN DEATH-QUALIFYING THE JURY IN VIOLATION OF  *WITHERSPOON V. ILLINOIS* AND *MORGAN V.*

*ILLINOIS.*.................................................................................326

**CLAIM XIV: THE STATE'S FAILURE TO DISCLOSE A DEAL IT MADE WITH A PROSECUTION WITNESS UNDERMINES CONFIDENCE IN THE RELIABILITY OF THE VERDICT IN VIOLATION OF** *BRADY v. MARYLAND*.........................................331

**CLAIM XV: ARTICLE 37.071(e) & (g)'S PROHIBITION AGAINST INFORMING JURORS THAT A SINGLE HOLDOUT JUROR WILL CAUSE THE IMPOSITION OF A LIFE SENTENCE VIOLATED MR. KING'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**.............................................................................338

**CLAIM XVI: MR. KING WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION 352**

**CLAIM XVII: IN VIEW OF THE MANY DIFFERENT CAPITAL SENTENCING SCHEMES THAT HAVE BEEN IN OPERATION IN TEXAS IN RECENT YEARS, THE TEXAS DEATH PENALTY HAS BEEN ARBITRARILY IMPOSED AND, THUS, IS UNCONSTITUTIONAL UNDER THE EIGHTH AMENDMENT AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.....361**

**CLAIM XVIII: THE DEATH PENALTY, AT LEAST AS PRESENTLY ADMINISTERED IN TEXAS, IS CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**.............................................................................368

**CLAIM XIX: LETHAL INJECTION IS CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION**.............................................................................372

**CLAIM XX: TRIAL COUNSEL WERE OPERATING UNDER A CONFLICT OF INTEREST IN VIOLATION OF PETITIONER'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS**.............................................387

**CLAIM XXI: THE CUMULATIVE EFFECT OF THE ERRORS AT MR. KING'S TRIAL DENIED HIM OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT**.............................................................................396

**V. CONCLUSION AND PRAYER FOR RELIEF**...................................400

**VERIFICATION**............................................................................................**402**

**CERTIFICATE OF SERVICE**................................................................................**403**

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adams v. Texas*, 448 U.S. 38 (1980) .............................................................346

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ..........................315, 319, 320, 321, 323

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) ..........................229

*Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967) ..................102, 354

*Anderson v. City of Bessemer*, 470 U.S. 564 (1985) .......................................98

*Andre v. Bendix Corp.*, 774 F.2d 786 (7th Cir. 1985) .....................................86

*Andres v. United States*, 333 U.S. 740 (1948) ..............................................347

*Andrews v. Collins*, 21 F.3d 612 (5th Cir. 1994) ..........................................133

*Antwine v. Delo*, 54 F.3d 1357 (8th Cir. 1995) .....................................105, 111

*Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000) .......165, 208-11, 229-30, 244

*Aptheker v. Secretary of State*, 378 U.S. 500, 84 S. Ct. 1659 ......................178

*Arizona v. Fulminante*, 499 U.S. 279 (1991) ................................................268

*Austin v. United States*, 509 U.S. 602 (1993) ...............................................309

*Avery v. Alabama*, 308 U.S. 444 (1940) .......................................................102

*Bailey v. United States*, 516 U.S. 137 (1995) ...............................................221

*Ex parte Bain*, 121 U.S. 1 (1887) .................................................................230

*Baldwin v. Maggio*, 704 F.2d 1325 (5th Cir. 1983),
   *cert. denied,* 467 U.S. 1220 (1984) ..........................................................108

*Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995) .......................................359

*Barclay v. Florida*, 463 U.S. 939 (1983) ........................ 115, 179, 180-81, 269

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ...........................................................
   ....................................124, 125, 128-32, 188-89, 192, 196-97, 202,238, 308

*Bates v. Little Rock*, 361 U.S. 516, 80 S. Ct. 412 (1960)...............................181

*Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1982). ...........................................389

*Baxter v. Thomas*, 45 F.3d 1501 (11th Cir. 1995) ........................... 105, 111-12

*Baylor v. Estelle*, 94 F.3d 1321 (9th Cir. 1996),
   *cert. denied,* 520 U.S. 1151, 117 S. Ct. 1329 (1997) .................................92

*Beam v. Paskett*, 3 F.3d 1301 (9th Cir. 1993) .................................................183

*Beck v. Alabama*, 447 U.S. 625 (1980) ..................................104, 269, 343, 382

*Becton v. Barnett*, 920 F.2d 1190 (4th Cir. 1990) ..........................................121

*Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995) ...........................................392-93

*Bell v. Watkins*, 692 F.2d 999 (5th Cir. 1982),
   *cert. denied sub nom Bell v. Thigpen,* 464 U.S. 843 (1983) ...................108

*Berger v. Iron Workers Reinforced Rodmen Local 201,*
   843 F.2d 1395 (D.C. Cir. 1988) ...................................................................86

*Berger v. United States*, 295 U.S. 78 (1935) ................................................333

*Blackmon v. Scott*, 22 F.3d 560 (5th Cir. 1994) ............................................335

*Blake v. Kemp*, 758 F.2d 523 (11th Cir. 1985) ......................................105, 109

*Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991),
   *cert. denied,* 504 U.S. 943 (1992) ...................................................... 111-12

*Blankenship v. Johnson*, 106 F.3d 1202 (5th Cir.),
   *superseded,* 118 F.3d 312 (5th Cir. 1997) ...............................................91

*Bonin v. Vasquez*, 999 F.2d 425 (9th Cir. 1993). ................................... 300-01

*Booker v. Murphy*, 953 F. Supp. 756 (S.D. Miss. 1997) ...............................384

*Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) .............95, 109, 112, 115

*Bounds v. Smith*, 430 U.S. 817 (1977) ..........................................................303

*Bousley v. United States*, 523 U.S. 614 (1998) .....................................219, 221

*Boyde v. California*, 494 U.S. 370 (1990) ............................................... 351-52

*Boyle v. Johnson*, 93 F.3d 180 (5th Cir. 1996) ...................................... 181-82

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................... 7, 331, 333-35

*Brasfield v. United States*, 272 U.S. 448 (1926) ........................................... 341

*Brewer v. Aiken*, 935 F.2d 850 (7th Cir. 1991) ...................................... 119-20

*Brock v. Merrell Dow Pharmaceuticals*, 884 F.2d 167 (5th Cir. 1989) .......199

*Brown v. United States*, 167 F.3d 109 (2nd Cir. 1999) ................................356
*Bryant v. Scott*, 28 F.3d 1411 (5th Cir. 1994) ..............................105, 165, 168

*Bullington v. Missouri*, 451 U.S. 430 (1981) ................................................115

*Burden v. Zant*, 24 F.2d 1298 (11th Cir. 1994) ..................................... 389-390

*Burley v. Cabana*, 818 F.2d 414 (5th Cir. 1987) ...........................................167

*Buttrum v. Black*, 721 F. Supp. 1268 (N.D.Ga. 1989), *aff'd*, 908 F.2d 695
  (11th Cir. 1990), *reh. denied*, 916 F.2d 719 (11th Cir. 1990) .................321

*Cabana v. Bullock*, 106 S. Ct. 689 (1986) ....................................................351

*Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328 (1990) ...............................217

*Calderon v. Ashmus*, 118 S. Ct. 1694 (1998) ...............................................288

*Caldwell v. Mississippi*, 427 U.S. 325 (1985). .............................................203

*California v. Brown*, 479 U.S. 538 (1985) ....................................................340

*Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975),
  *cert. denied*, 425 U.S. 911 (1976) ............................................................337

*Callins v. Collins*, 114 S. Ct. 1127 (1994) ...................................... 101, 370-71

*Calton v. Utah*, 130 U.S. 83 (1889) ......................................................... 350-51

*Cantu-Tzin v. Johnson*, 162 F.3d 295 (5th Cir. 1998) ..................................313

*Carella v. California*, 491 U.S. 263 (1989) ..................................................243

*Carter v. Illinois*, 329 U.S. 173 (1946) ........................................................306

*Case v. Nebraska*, 381 U.S. 336 (1965) .................................................. 306-07

*Castillo*, 504 F.2d at 1245 ....................................................... 394-95

*Castro v. State*, 71 F.3d 1502 (10th Cir. 1995) .............................................321

*Chambers v. Florida*, 309 U.S. 227 (1940) ...........................................250, 286

*Chambers v. Mississippi*, 410 U.S. 284 (1973) .............................................165

*Chandler v. Florida*, 449 U.S. 560 (1981) ...........................................265, 267

*Childress v. Johnson*, 103 F.3d 1221 (5th Cir. 1997) .....................................93

*Church v. Sullivan*, 942 F.2d 1501 (10th Cir. 1991) .....................................393

*Claudio v. Scully*, 982 F.2d 798 (2nd Cir. 1992),
    *cert. denied*, 508 U.S. 912 (1993) ..........................................................359

*Coleman v. Thompson*, 501 U.S. 722 (1991) ....................... 299-300, 302, 309

*Collier v. Turpin*, 155 F.3d 1277 (11th Cir. 1998) ......................................118

*Cook v. Lynaugh*, 821 F.2d 1072 (5th Cir. 1987) ........................................107

*Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) ..................................155

*Cowley v. Stricklin*, 929 F.2d 640 (11th Cir. 1991) .....................................320

*Cox v. Louisiana*, 379 U.S. 559 (1965) .................................. 262, 266-67, 271

*Cuthbertson v. Biggers Brothers, Inc.*, 702 F.2d 454 (4th Cir. 1984) ............98

*Cuyler v. Sullivan*, 100 S. Ct. 1708 (1980) ..................................389, 390, 392

*Daniels v. United States*, 254 F.3d 1180 (10th Cir. 2001) ...................... 225-26

*Daubert v. Merrill-Dow Pharmaceuticals, Inc.*,
    113 S. Ct. 2786 (1993) ...........................142-46, 189, 190-93, 198, 203-05

*Davis v. Georgia*, 429 U.S. 122 (1976) ........................................................330

*Davis v. Kramer*, 167 F.3d 494 (9th Cir. 1999) ...........................................357

ix

*Dawson v. Delaware*, 503 U.S. 159, 112 S. Ct. 1093 (1992) ... 177 et seq., 203

*Delgado v. Lewis*, 181 F.3d 1087 (9th Cir. 1999) ...........................................77

*Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992),
    *cert. denied,* 113 S. Ct. 2928 (1993)*, recognized ............................397, 398

*Devier v. Zant*, 3 F.3d 1445 (11th Cir. 1993) ........................................237, 239

*Dickerson v. Vaughn*, 90 F.3d 87 (3rd Cir. 1996) ............................................93

*Dillard v. Roe*, 244 F.3d 758 (9th Cir. May 17, 2001) ................................222

*Dowling v. United States*, 493 U.S. 342 (1990) ...................................... 398-99

*Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996) ........................................69

*Duhamel v. Collins*, 955 F.2d 962 (5th Cir. 1993) ................................. 355-56

*Dyer v. Calderon*, 151 F.3d 970 (9th Cir.),
    *cert. denied,* 119 S.Ct. 575 (1998) ........................................................268

*Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869 (1982)  107, 194, 269, 382

*Emerson v. Gramley*, 91 F.3d 898 (7th Cir. 1996) ......................................120

*Enmund v. Florida*, 458 U.S. 782 (1982) ...................................................217
*Estelle v. Dorrough*, 420 U.S. 534 (1975) ....................................310, 312, 313

*Estelle v. Williams*, 425 U.S. 501 (1976) ................................................ 262-63

*Estes v. Texas*, 381 U.S. 532 (1965) ..........................248-49, 250, 262, 264-65

*Evitts v. Lucey*, 469 U.S. 387 (1985) ....................................299, 305, 354, 356

*Ewing v. Williams*, 596 F.2d 391 (9th Cir. 1979) ........................................155

*FMC Corp. v. Varco Internat'l*, 677 F.2d 500 (5th Cir. 1982) ......................98

*Faretta v. California*, 422 U.S. 806 (1975) ..................................................100

*Farmer v. Brennan*, 511 U.S. 825 (1994) .....................................................383

*Felker v. Turpin*, 518 U.S. 651 (1996) ..........................................................67

x

*Felker v. Turpin*, 518 U.S. 651 (1996) ............................................................301

*Fierro v. Gomez*, 77 F.3d 301 (9th Cir. 1996),
     *vacated on other grounds*, 519 U.S. 918 (1996) .....................................384

*Fierro v. Gomez*, 865 F. Supp. 1387 (N.D. Cal. 1994), *aff'd*, 77 F.3d 301
     (9th Cir. 1996), *vacated on other grounds*, 519 U.S. 918 (1996) ...379, 384

*Fisher v. Texas*, 169 F.3d 295 (5th Cir. 1999) ...........................................76, 91

*Flores v. Johnson*, 210 F.3d 456 (5th Cir. April 20, 2000) ................. 195-204

*Ford v. Lockhart*, 861 F. Supp. 1447 (E.D. Arkansas 1994) ........................110

*Ford v. Wainwright*, 477 U.S. 399 (1986) ....................................................382

*Foster v. Illinois*, 332 U.S. 134 (1947) .........................................................306

*Foster v. Lockhart*, 9 F.3d 722 (8th Cir. 1993) .....................................166, 168

*Francis v. Franklin*, 471 U.S. 307 (1985) ....................................................340

*Frank v. Mangum*, 237 U.S. 309 (1915) ...............................................286, 306

*Franklin v. Lynaugh*, 487 U.S. 164, 108 S. Ct. 2320 (1988) .......................107

*Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1991) .........................................360

*Freund v. Butterworth*, 165 F.3d 839 (11th Cir.),
     *cert. denied*, 120 S. Ct. 57 (1999) ...........................................................393

*Frye v. United States*, 293 F. 1014 (D.C. 1923) ....................................142, 190

*Furman v. Georgia*, 408 U.S. 238 (1972) .............................................365, 366

*Gacy v. Welborn*, 994 F.2d 305 (7th Cir. 1993),
     *cert. denied* 114 S. Ct. 269 (1993) ...........................................................351

*Gardner v. Florida*, 430 U.S. 349 (1977) .............107, 203, 236, 237, 344, 382

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ................................................172

*Giglio v. United States*, 405 U.S. 150 (1972) ........................................333, 335

*Glasser v. United States*, 315 U.S. 60 (1942) ............................................102

*Glock v. Singletary*, 84 F.3d 385 (11th Cir.),
    *cert. denied,* 117 S. Ct. 616 (1996) ...........................................95

*Godfrey v. Georgia*, 446 U.S. 420 (1980) ......................................366

*Goeke v. Branch*, 514 U.S. 115 (1995) .........................................355

*Gonzales v. Beto*, 405 U.S. 1052 (1972) ......................................264

*Goodwin v. Balkcom*, 684 F.2d 794 (11th Cir. 1982) ..... 108, 120, 121, 123-24

*Graham v. Collins*, 506 U.S. 461 (1993) ...............................206, 224

*Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982),
    *cert. denied*, 461 U.S. 910, 103 S. Ct. 1886 (1983) ...............109, 121, 168

*Gray v. Mississippi*, 481 U.S. 648 (1987) ....................................330

*Gray v. Mississippi*, 481 U.S. 658 (1987) ....................................268

*Green v. Cain,* 1998 WL 259970, at 1 (E.D. La. May 19, 1998) ...................89

*Green v. Johnson*, 116 F.3d 1115 (5th Cir. 1997) .........................................78

*Gregg v. Georgia*, 428 U.S. 153 (1976) .192, 236-37, 244, 367, 369, 370, 382

*Griffin v. Warden*, 970 F.2d 1355 (4th Cir. 1992) ......................................105

*Hall v. Washington*, 106 F.3d 742 (7th Cir. 1997),
    *cert. denied,* 118 S. Ct. 264 (1997) .........................................93

*Harris By and Through Ramseyer v.  Wood*, 64 F.3d 1432
    (9th Cir. 1995) ................................................................ 154-56

*Harris v. Dugger*, 874 F.2d 756 (11th Cir. 1989); .......................................107

*Harris v. Pulley*, 885 F.2d 1354 (9th Cir. 1988) .................................... 284-85

*Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990) .........................................105, 109

*Ex Parte Hawk*, 321 U.S. 114 (1944) .........................................................306

*Heath v. Jones*, 941 F.2d 1126 (11th Cir. 1991) ...........................................355

xii

*Heckler v. Mathews*, 465 U.S. 728 (1984); .....................................................311

*Helling v. McKinney*, 509 U.S. 25 (1993) .....................................................384

*Hendricks v. Calderon*, 70 F.3d 1032 (9th Cir. 1995),
    *cert. denied,* 116 S. Ct. 1335 (1996) .......................................................116

*Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974) .........................................102

*Hicks v. Oklahoma*, 447 U.S. 343 (1979) .............................................305, 311

*Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996),
    *cert. denied,* 117 S. Ct. 967 (1997); .................................................... 300-01

*Hill v. Lockhart*, 28 F.3d 832 (8th Cir. 1994) ......................................105, 111

*Hogan v. Gibson*, 197 F.3d 1297 (10th Cir. 1999) .........................................79

*Hohn v. United States*, 524 U.S. 236, 118 S. Ct. 1969 (1998) .......................67

*Holbrook v. Flynn*, 475 U.S. 560 (1986) ........................................ 250, 262-63

*Holbrook v. Institutional Insurance Co.*, 369 F.2d 236 (7th Cir. 1966) .........98

*Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173 (1978) ................104, 389

*Horton v. Zant*, 941 F.2d 1449 (11th Cir. 1991) .........................................110

*Hudson v. Rushen*, 686 F.2d 826 (9th Cir. 1982),
    *cert. denied,* 461 U.S. 916, 103 S. Ct. 1896 (1983) ........................174, 175

*Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1998) ................................113

*Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites
    de Guinee*, 456 U.S. 694, 102 S. Ct. 2099(1982) ...................................227

*Irwin v. Dowd*, 366 U.S. 717 (1961) .....248, 250, 262, 267, 271, 273, 284, 287

*Jackson v. Leonardo*, 162 F.3d 81 (2nd Cir. 1998) ......................................357

*Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997) ............................................93

*Johnson v. Hopper*, 639 F.2d 236 (5th Cir. 1981) .......................................394

xiii

*Johnson v. Mississippi*, 403 U.S. 212 (1971) .................................................100

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ................................. 236-37, 382

*Johnson v. Texas*, 119 S. Ct. 2658 (1993) ....................................................346

*Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000) ......................................222, 225

*Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215 .................................209

*Jones v. Wood*, 114 F.3d 1002 (9th Cir. 1997) ...............................................92

*Kelly v. United States*, 29 F.3d 1107 (7th Cir. 1994) ....................................228

*Kenley v. Armontrout*, 937 F.2d 1298 (8th Cir.),
    *cert. denied*, 112 S. Ct. 431 (1991) .................................................110, 113

*Kennedy v. Mendoza-Shields*, 372 U.S. 144 (1963) ......................................309

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ......................................112, 166

*Kinder v. United States*, 112 S. Ct. 2290 (1992) ...........................................241

*King v. Strickland*, 748 F.2d 1462 (11th Cir. 1984) .............................. 110-11

*Kirkpatrick v. Blackburn*, 777 F.2d 272 (5th Cir. 1985),
    *cert. denied*, 476 U.S. 1178 (1986) ...........................................................397

*Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993) ..........................116, 338

*Knox v. Collins*, 928 F.2d 657 (5th Cir. 1991) .............................................311

*Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir.),
    *cert. denied*, 499 U.S. 970 (1991) ............................................................320

*Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989) ............107, 116, 119, 342, 347

*Kumho Tire v. Carmichael*, 119 S. Ct. 1167 (1999) ......................................199

*Kyles v. Whitley*, ___ U.S. ___, 115 S. Ct. 1555 (1995) ........................ 334-37

*Laws v. Armontrout*, 863 F.2d 1377 (8th Cir. 1988),
    *cert. denied*, 490 U.S. 1040, 109 S. Ct. 1944 (1989) .............................110

*Lewis v. Jeffers*, 497 U.S. 764, 110 S. Ct. 3092 (1990) ................................322

*Liegakos v. Cooke*, 106 F.3d 1381 (7th Cir. 1997) ........................................76

*Lindh v. Murphy*, 117 S. Ct. 2059 (1997) ......................................................67

*Lindsey v. King*, 769 F.2d 1034 (5th Cir. 1985) ...................................336, 338

*Livingston v. Johnson*, 107 F.3d 297 (5th Cir. 1997) ...................................104

*Lockett v. Ohio*, 438 U.S. 586 (1977) ...................................107, 194, 204, 382

*Lockhart v. Fretwell*, 506 U.S. 364 (1993) ....................................73, 133, 170

*Lockhart v. Johnson*, 104 F.3d 54 (5th Cir.),
    *cert. denied,* 117 S. Ct. 2518 (1997)..........................................................91

*Lockhart v. McCree*, 476 U.S. 162 (1986) ..................................................329

*Lonchar v.Thomas*, 517 U.S. 314 (1996) ......................................................68

*Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947) .......................385

*Lowenfield v. Phelps*, 484 U.S. 231 (1988) ...........................................341, 344

*Loyd v. Whitley*, 977 F.2d 149 (5th Cir. 1992) .....................................105, 169

*Lucas v. O'Dea*, 169 F.3d 1028 (6th Cir. 1999) ...........................................356

*Lust by and through Lust v. Merrell Dow Pharmaceuticals,*
    89 F.3d 594 (9th Cir. 1996) ....................................................................199

*Lyons v. McCotter*, 770 F.2d 529 (5th Cir. 1985) ........................................169

*M.L.B. v. S.L.J.*, 117 S. Ct. 555 (1996) ........................................................313

*Mackall v. Angelone*, 131 F.3d 442 (4th Cir. 1997),
    *cert. denied*, 118 S. Ct. 907 (1998) ("*Mackall II*"); ...............................300

*Mackall v. Murray*, 109 F.3d 957 (4th Cir. 1997) ................................300, 301

*Maiden v. Bunnell*, 35 F.3d 477 (9th Cir. 1994) ...........................................393

*Mainiero v. Jordan*, 105 F.3d 361 (7th Cir. 1997) ........................................76

*Mak v. Blodgett*, 970 F.2d 614 (9th Cir. 1992) .............................116, 155, 347

*Marks v. United States*, 430 U.S. 188 (1978)) ...............................................304

*Marshall v. United States*, 360 U.S. 310 (1959) ...........................................249

*Martin v. Maggio*, 711 F.2d 1273 (5th Cir. 1983),
    *cert. denied*, 469 U.S. 1028 (1984) ..........................................121

*Martinez- Macias v. Collins*, 810 F. Supp. 782 (W.D. Tex. 1991),
    *aff'd*, 979 F.2d 1067 (5th Cir. 1992) ................................................108, 167

*Mata v. Johnson*, 99 F.3d 1261 (5th Cir. 1996),
    *vacated on other grounds,* 105 F.3d 209 (5th Cir. 1997) ........................93

*Mayola v. Alabama*, 623 F.2d 992 (5th Cir. 1980) ...............................248, 250

*McCleskey v. Zant*, 499 U.S. 467 (1991) ......................................................313

*McConico v. Alabama*, 919 F.2d 1543 (11th Cir. 1990) ...............................393

*McCoy v. U.S.*, 266 F.3d 1245 (11th Cir. 2001) ......................................226-31

*McDonough Power Equipment Co. v. Greenwood*, 464 U.S. 548 (1984) ....268

*McDougall v. Dixon*, 921 F.2d 518 (4th Cir. 1991) .....................................112

*McDowell v. Dixon*, 850 F.2d 740 (4th Cir. 1988) .......................................334

*McFarland v. Scott*, 114 S. Ct. 2568 (1994) ....................................................4

*McFarland v. Scott*, 512 U.S. 849 (1994) ....................................................308

*McKoy v. North Carolina*, 494 U.S. 433 (1990) ...........................................345

*McMann v. Richardson*, 397 U.S. 759 (1970) ..............................................102

*McMillian v. Pennsylvania*, 477 U.S. 79 (1986) ...................................239, 240

*Mickens v. Taylor*, 122 S. Ct. 1237 (2002) ...........................................390, 391

*Miller-El v. Johnson*, 261 F.3d 445 (5th Cir. 2001) .....................................184

*Miller-El v. Johnson*, 2000 WL 724534, (N.D. Tex. June 5, 2000) ...............70

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000) .....................................90, 91

xvi

*Mills v. Maryland*, 486 U.S. 367 (1988) ................................................340, 345

*Mitchell  v. Kemp*, 762 F.2d 886 (11th Cir. 1985),
   *cert. denied*, 483 U.S. 1026, 107 S. Ct. 3248 (1987) ........................ 108-09

*Monge v. California*, 118 S. Ct. 2246 (1998) ...............................................308

*Mooney v. Holohan*, 294 U.S. 103 (1935) ............................................305, 333

*Moore v. Dempsey*, 261 U.S. 86 (1923) ................................................271, 286

*Moore v. Johnson*, 185 F.3d 244 (5th Cir. 1999) .........................................117

*Moore v. Johnson*, 194 F.3d 602 (5th Cir. 1999) ............................ 169, 117-18

*Moore v. Park*, 148 F.3d 705 (7th Cir. 1998) ...............................................92

*Morgan v. Illinois*, 112 S. Ct. 2222 (1992) ...................................327, 329, 330

*Morgan v. Illinois*, 504 U.S.  719 (1992) ......................................................267

*Mullaney v. Wilbur*, 421 U.S. 684 (1975) ...................................................215

*Murphy v. Florida*, 421 U.S. 794 (1975) ......................................................271

*Murray v. Carrier*, 477 U.S. 478 (1986) ......................................................314

*Murray v. Giarratano*, 492 U.S. 1 (1989) ............................303, 305, 308, 313

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S. Ct. 1163 ...........178
*Napue v. Illinois*, 360 U.S. 264 (1959) ........................................................333

*Narvaiz v. Johnson*, 134 F.3d 688 (5th Cir. 1998) ......................................322

*Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) .........................................78, 90

*Nealy, supra*, 782 F.2d at 1365 ...........................................................394, 395

*Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) ...............266, 284

*Neeley v. Nagle*, 138 F.3d 917 (11th Cir. 1998),
   *cert. denied,* 119 S. Ct. 811 (1999) ...........................................................92

*Nix v. Whiteside*, 475 U.S. 157 (1986) .......................................................170

*Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997) ...........................................77

*Norris v. Risley*, 878 F.2d 1178 (9th Cir. 1989) ...........................................272

*Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990) ...........................................266

*O'Dell v. Netherland*, 117 S. Ct. 1969 (1997); ...........................................206

*ONeal v. McAnnich*, 513 U.S. 432 (1995). ...........................................67

*Ohio Adult Parole Authority v. Woodard*, 118 S. Ct. 1244 (1998)........201, 312

*Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993) ...........................310

*Osborne v. Shillinger*, 861 F.2d 612 (10th Cir. 1988) ...................................163

*Parker v. Gladden*, 385 U.S. 363 (1966) ...................................................264

*Parker v. Randolph*, 442 U.S. 62 (1979) ...................................................351

*Patterson v. New York*, 432 U.S. 197 (1977) ...............................................215

*Paxton v. Ward*, 199 F.3d 1197 (10th Cir. 1999) ...........................................79

*Pennsylvania v. Finley*, 481 U.S. 551 (1987) ...............................................305

*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) ...............................................334

*Penry v. Lynaugh*, 492 U.S. 302 (1989) ................ 194, 204-05, 224, 349, 361

*Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000) ...........................................392

*Perillo v. Johnson*, 79 F.3d 441 (5th Cir. 1996) .....................95, 391, 392, 395

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................101

*Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir. 1983) .............................110, 118

*Powell v. Alabama*, 287 U.S. 45 (1932) .......................................102, 107, 108

*Profitt v. Waldren*, 831 F.2d 1245 (5th Cir. 1987) ...............112, 163, 164, 169

*Pulley v. Harris*, 465 U.S. 37 (1984) .............................................................365

*Ramey Construction Co. v. Apache Tribe*, 616 F.2d 464 (10th Cir. 1980) .....98

*Ransom v. Johnson*, 126 F.3d 716 (5th Cir. 1997) ......................................133

*Reece v. Georgia*, 350 U.S. 85 (1955) ...........................................................102

*Reed v. Ross*, 468 U.S. 1 (1984) ....................................................................71

*Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997),
    *cert. denied,* 523 U.S. 1133 (1998) ..........................................................163

*Rideau v. Louisiana*, 373 U.S. 723 (1963) ....................249, 250, 263, 285, 287

*Ring v. Arizona*, _____U.S._____, 122 S. Ct. 2428 (2002) ........ 208, 209-10, 244

*Roberts v. Ross*, 344 F.2d 747 (3rd Cir. 1965) ................................. 86, 98-100

*Rock v. Arkansas*, 483 U.S. 44 (1987) ..................................100, 142, 189, 192

*Roe v. Delo*, 160 F.3d 416 (8th Cir. 1998) .....................................................358

*Ross v. Oklahoma*, 487 U.S. 81 (1988) ..........................................................330

*Ex Parte Royall*, 117 U.S. 241 (1886) ...........................................................306

*Ruffin v. Kemp*, 767 F.2d 748 (11th Cir. 1985) ............................................389

*Russell v. United States*, 369 U.S. 749 (1962) ..............................................230

*Schlup v. Delo*, 513 U.S. 298 (1995) ...............................................................77

*Schware v. Board of Bar Examiners of N.M.*,
    353 U.S. 232, 77 S. Ct. 752 (1957) .............................................................181

*Shaw v. Martin*, 733 F.2d 304 (4th Cir. 1984) ................................................86

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ...................248-50, 263, 265, 286

*Silber v. United States*, 370 U.S. 717 (1962) .................................................230

*Simmons v. South Carolina*, 114 S. Ct. 2187 (1994) ............................. 342-43

*Singletary v. Woods*, 502 U.S. 953 (1991) .....................................................270

*Siripongs v. Calderon*, 35 F.3d, 1318 (9th Cir. 1994) ...................................168

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ...............................................107

*Slack v. McDaniel*, 120 S. Ct. 1595 (2000) ....................................................67

*Smith v. Lockhart*, 923 F.2d 1314 (8th Cir. 1991) ................................... 173-74

*Smith v. McCormick*, 914 F.2d 1153 (9th Cir. 1990) ....................320, 322, 324

*Smith v. Phillips*, 455 U.S. 209 (1982) .................................................265, 267

*Smith v. Smith,* 1998 WL 764761, at 2 (6th Cir. Oct. 19, 1998).....................89

*Southwestern Telegraph & Telephone Co. v.*
    *Danaher*, 238 U.S. 482 (1915) .................................................................310

*Spaziano v. Florida*, 468 U.S. 447 (1984) ............................................. 365-66

*Spicer v. Warden*, 31 F.Supp.2d 509 (D.Md. 1998) .......................................94

*Stansbury v. California*, 511 U.S. 318 (1994) .................................................82

*Stephens v. Kemp*, 846 F.2d 642 (11th Cir.),
    *cert. denied*, 488 U.S. 872, 109 S. Ct. 189 (1988) .................................109

*Stewart v. Martinez-Villareal*, 118 S. Ct. 1618 (1998) .................................67

*Stirone v. United States*, 361 U.S. 212 (1960) ..............................................230

*Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) ......................................390

*Strickland v. Washington*, 466 U.S. 688 (1984) ..................................... passim

*Strickler v. Greene*, 119 S. Ct. 27 (1998) .........................................................77

*Stringer v. Black*, 112 S. Ct. 1130 (1992) .....................................................237

*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078 (1993) ...............147, 217

*Swann v. Taylor,* 1999 WL 92435, at 5 (4th Cir. Feb. 18, 1999),
    *cert. denied,* 119 S. Ct. 1591 (1999) ........................................................89

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ............................133, 262, 397, 399

*Teague v. Lane*, 489 U.S. 288 (1989) ...................................................205, 219

*Thomas v. Kemp*, 796 F.2d 1322 (11th Cir.),
    *cert. denied*, 479 U.S. 996, 107 S. Ct. 602 (1986) .........................108, 109

*Thompson v. Calderon*, 118 S. Ct. 1489 (1998) ....................................311, 314

*Thompson v. Oklahoma*, 487 U.S. 815 (1988) .............................................369

*Thompson v. Wainwright*, 787 F.2d 1447 (11th Cir. 1986) .........................121

*Tison v. Arizona*, 481 U.S. 137 (1987) ...................................................217, 218

*Trice v. Ward*, 196 F.3d 1151 (10th Cir. 1999) ...............................................89

*Trope v. Dulles*, 356 U.S. 86 (1958) ......................................................369, 384

*Tucker v. Prelesnik*, __F.3d__, 1999 WL 374105 (6th Cir. June 10, 1999) ...92

*Tumey v. Ohio*, 273 U.S. 510 (1927) ...........................................................287

*Turner v. Louisiana*, 379 U.S. 466 (1965) ....................................263, 264, 273

*Tyler v. Swenson*, 427 F.2d 412 (8th Cir. 1970) .............................................98

*United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978) .....................392, 395

*United States v. Auten*, 632 F.2d 478 (5th Cir. 1980) ...................................337

*United States v. Bagley*, 473 U.S. 667 (1985) ........................................ 334-35

*United States v. Bajakajian*, 118 S. Ct. 2028 (1998) ...................................310

*United States v. Bjorkman*, 270 F.3d 482 (7th Cir. 2001) ...........................233

*United States v. Broadwell*, 959 F.2d 242 (9th Cir. 1992) ...........................228

*United States v. Clark*, 260 F.3d 382 (5th Cir. July 26, 2001) ............... 220-24

*United States v. Cook*, 45 F.3d 388 (10th Cir. 1995) ...................................359

*United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001) .................................232

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984)  102-04, 271-72

*United States v. Cronic*, 839 F.2d 1401 (10th Cir. 1988) .............................112

*United States v. Doggett*, 230 F.3d 160 (5th Cir. 2000) ...............................220

*United States v. Dunnigan*, 507 U.S. 87 (1993) .............................................313

*United States v. Gaudin*, 515 U.S. 506 (1995) ...............................................222

*United States v. Griffin*, 303 U.S. 226, 58 S. Ct. 601, 82 L. Ed. 764 (1938) 228

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976),
     *cert. denied*, 431 U.S. 933 (1977) ...........................................................266

*United States v. Hart*, 557 F.2d 162 (8th Cir.),
     *cert. denied*, 434 U.S. 906, 98 S. Ct. 305 (1977) ....................................174

*United States v. Herring*, 568 F.2d 1099 (5th Cir. 1978) .............................266

*United States v. Jackson*, 240 F.3d 1245 (10th Cir. 2001),
     *rehearing en banc denied* .........................................................................232

*United States v. Jones*, 235 F.3d 1231 (10th Cir. 2000) ...............................220

*United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990) ....................240-41

*United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 .................................210

*United States v. McNatt*, 931 F.2d 251 (4th Cir. 1991) ................................238

*United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993) ................236-37, 240

*United States v. Miller*, 471 U.S. 130 (1985) ................................................231

*United States v. Mojica-Baez*, 229 F.3d 292 (1st Cir. 2000) .......................233

*United States v. Moss*, 252 F.3d 993 (8th Cir. June 11, 2001) .....................222

*United States v. Prentiss*, 256 F.3d 971 (10th Cir. July 12, 2001) .........232-33

*United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001) ...............................220

*United States v. Reese*, 92 U.S. 214 (1875) ..................................................230

*United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) .......................222, 225

*United States v. Scheffer*, 118 S. Ct. 1261 (1998) ..................................198, 200

*United States v. Tate*, 419 F.2d 131 (6th Cir. 1969) ....................................121

*United States v. Thomas*, __ F.3d ___, 2001 WL 1579993 (2nd Cir. 2001)  233

*United States v. Thompson*, 827 F.2d 1254 (9th Cir. 1987) ..........................100

*United States v. Wright*, 873 F.2d 437 (4th Cir. 1989) .................................240

*Vela v. Estelle*, 708 F.2d 954 (5th Cir. 1983),
    *cert. denied*, 464 U.S. 1053 (1984) ................................................. 166-67

*Wainwright v. Witt*, 469 U.S. 412 (1985)  ...................................................330

*Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047  .......................208, 209, 211

*Washington v. Texas*, 388 U.S. 14 (1967) ....................................................165

*Weeks v. Angelone*, 176 F.3d 249 (4th Cir. 1999)  ....................................76, 94

*Welch v. Beto*, 355 F.2d 1016 (5th Cir.),
    *cert. denied*, 385 U.S. 839 (1966) .........................................................305

*Williams (Michael) v. Taylor*, 529 U.S.____,
    120 S. Ct. 1479 (2000) ...............................................................66, 68, 71

*Williams(Terry) v. Taylor*, 529 U.S.____, 120 S. Ct. 1495 (2000) ........... 66-84

*Williams v. Lynaugh*, 814 F.2d 205 (5th Cir. 1987)  ....................................245

*Williams v. Washington*, 59 F.3d 673 (7th Cir. 1995)  .................................105

*Williams v. Whitley*, 940 F.2d 132 (5th Cir. 1991) ......................................337

*Wilson v. Butler*, 813 F.2d 664 (5th Cir. 1987),
    *cert. denied*, 484 U.S. 1079, 108 S. Ct. 1059 (1988) .....................109, 113

*Wilson v. Mintzes*, 761 F.2d 275 (6th Cir. 1985) .........................................173

*In re Winship*, 397 U.S. 358 (1970) .............................................165, 239, 243

*Witherspoon v. Illinois*, 391 U.S. 410 (1969)  .......................................326, 329

*Wood v. Georgia*, 450 U.S. 261, 101 S. Ct. 1097 (1981) ....................173, 388

*Woods v. Dugger*, 923 F.2d 1454 (11th Cir. 1991) ...............250, 269, 270, 273

*Woods v. Nierstheimer*, 328 U.S. 211 (1946) ...............................................307

*Woodson v. North Carolina*,
    428 U.S. 280 (1976) ....................194, 203-04, 236-37, 241, 273, 344, 382

*Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998) .........................................78

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991) ....................................................302

*Young v. Ragen*, 337 U.S. 235 (1949) ...........................................................306

*Zant v. Stephens*, 462 U.S. 862, 103 S. Ct. 2733 (1983) ........ 178-79, 236, 269

*Zuck v. Alabama*, 588 F.2d 436 (5th Cir. 1979); ................................389, 394

## STATE CASES

*Armstrong v. State*, 897 S.W.2d 361 (Tex. Crim. App. 1995) .....................268

*Arnold v. State*, 873 S.W.2d 27 (Tex. Crim. App. 1994) .............................269

*Atley v. Ault*, 21 F.Supp2d 949 (S.D.Iowa 1998) ...........................................94

*Ballew v. State*, 640 S.W.2d 237 (Tex. Crim. App. 1980) ...........................324

*Boggess v. State*, 855 S.W.2d 645 (Tex. Crim. App. 1991) .........................363

*Brooks v. State*, 385 S.E.2d 81 (Ga. 1989) ...................................................323

*Burnett v. State*, 642 S.W.2d 765 (Tex. Crim. App. 1982) ..........................324

*Burns v. State*, 761 S.W.2d 353 (Tex. Crim. App. 1988) .............................216

*Butler v. State*, 716 S.W.2d 48 (Tex. Crim. App. 1986) ..............................168

*Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1981) ...........................243

*Commonwealth v. Priovolos*, ___ A.2d ___, 1998 WL 412433
    (Pa. July 23, 1998) .................................................................................301

*Cook v. State*, 369 So. 2d 1251 (Ala. 1979) ................................................243

*Cuevas v. State*, 742 S.W.2d 331 (Tex. Crim. App. 1987) ...........................216

*Curry v. Zant*, 371 S.E.2d 647 (Ga. 1988) ....................................................104

*Ex Parte Davis*, 947 S.W.2d 216 (Tex. Crim. App. 1996) ...........................301

*Davis v. State*, 782 S.W.2d 211 (Tex. Crim. App. 1989) ....................... 340-41

*DeFreece v. State*, 848 S.W.2d 150 (Tex. Crim. App. 1993) ......... 322, 324-25

*Draughon v. State*, 831 S.W.2d 331 (Tex. Crim. App. 1992) ............... 347-48

*Earhart v. State*, 823 S.W.2d 607 (Tex. Crim. App. 1991) ..........................216

*Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991) ...........................216

*Flores v. State*, 576 S.W.2d 632 (Tex. Crim. App. 1978.) ...........................168

*Flores v. State*, 871 S.W.2d 714 (Tex. Crim. App. 1993),
     *cert. denied*, 513 U.S. 926 (1994) ...........................................................311

*Fuller (Aaron) v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992) .......193, 364

*Fuller (Tyrone) v. State*, 827 S.W.2d 919 (Tex. Crim. App. 1992) ..............363

*Ex Parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1996) .......................297

*Gore v. Florida*, 614 So. 2d 1111 (Fla. App. 1992) .....................................325

*Granviel v. State*, 552 S.W.2d 107 (Tex. Crim. App. 1976) .........................325

*Hernandez v. State*, 757  S.W.2d 744 (Tex. Crim. App. 1988) ....................329

*Hughes v. State*, 878 S.W.2d 142 (Tex. Crim. App. 1992) ...........................216

*Hutchinson v. State*, 663 S.W.2d 610 (Tex. App.--Houston [1st Dist.] 1983,
     pet. ref.) .................................................................................................168

*Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) ..............................191

*Kentucky Milk Marketing & Anti-Monopoly Com. v, Borden Co.*,
     456 S.W.2d 831 (Ky. 1969) .......................................................................98

*King v. State,* 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) 2, 157, 159, 160-62

*Krupp v. Krupp*, 236 A.2d 653 (Vt. 1967) .......................................................98

*Lakin v. Stine,* 44 F. Supp.2d 897 (E.D.Mich. 1999).......................................94

*Lawton v. State*, 913 S.W.2d 542 (Tex. Crim. App. 1995) ...........................212

*Ex parte Lilly*, 656 S.W.2d 490 (Tex. Crim. App. 1983) ...............................168

*Louisiana v. Brooks*, 541 So. 2d 801 (La. 1989) ...........................................244

*Martinez v. State*, 867 S.W.2d 30 (Tex. Crim. App. 1993) .................... 364-65

*McGregor v. State*, 733 P.2d 416 (Okla. Crim. App. 1987) ..........................323

*Ex parte McKay*, 819 S.W.2d 478 (Tex. Crim. App. 1991) ..........................269

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993) .............................217

*Nashville , C. & S. L. Railway v. Price*, 148 S.W. 219 (Tenn. 1911) .............98

*Norwood v. State*, 58 S.W.2d 100 (Tex. Crim. App. 1933) ..........................268

*People v. Balderas*, 41 Cal. 3d 144, 222 Cal. App. 184,
   711 P.2d 480 (Cal. 1985) ........................................................244

*People v. Durre*, 690 P.2d 165 (Colo. 1984) .......................................... 348-49

*People v. Heishman*, 753 P.2d 629 (Cal. 1988) ............................................237

*People v. Wood*, 488 N.E.2d 86 (N.Y. 1985) .......................................... 147-49

*Phillips v. Phillips*, 464 P.2d 876 (Colo. 1970) .............................................98

*Prevence v. State*, 377 So. 2d 783 (Fla. 1976) .............................................244

*Quinones v. State*, 592 S.W.2d 933 (Tex. Crim. App. 1980) ......................363

*Renfro v. State*, 586 S.W.2d 496 (Tex. Crim. App. 1979) ...........................173

*Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App. 1995) ................... 320, 322-23

*Rios v. State*, 846 S.W.2d 310 (Tex. Crim. App. 1992) ................................363

*Robison v. State*, 888 S.W.2d 473 (Tex. Crim. App. 1994) ..........................217

*Rothering v. McCaughtry*, 556 N.W.2d 136 (Wis. Ct. App. 1996),
  *review denied*, 560 N.W.2d 277 (1997) ...................................301

*Salazar v. State*, 562 S.W.2d 480 (Tex. Crim. App. 1978) ...........................268

*San Miguel v. State*, 864 S.W.2d 493 ( Tex. Crim. App. 1993) ...................364

*Satterwhite v. State*, 858 S.W.2d 412 (Tex. Crim. App. 1993) ...................363

*Scott v. State*, 297 Md. 235, 465 A.2d 1126 (Md. 1983) .............................243

*See also E.I. du Pont de Nemours & Co. v. Robinson*,
  923 S.W.2d 549 (Tex. 1995) ...................................................199

*Skinner v. State*, 956 S.W.2d 532 (Tex. Crim. App. 1997) .................... 324-25

*State v. Bartholomew*, 101 Wash. 2d 631, 683 P.2d 1079 (Wash. 1984) .....243

*State v. Bobo*, 727 S.W.2d 945 (Tenn. 1987),
  *cert, denied*, 484 U.S. 872 (1987) ............................................243

*State v. Hickey*, 346 S.E.2d 646 (N.C. 1986) .................................323

*State v. Luce*, 628 A.2d 707 (N.H. 1993) ......................................193

*State v. McCormick*, 272 Ind. 272, 397 N.E.2d 276 (1979) .................... 242-43

*State v. McPherson*, 851 S.W.2d 846 (Tex. Crim. App. 1992) ............. 362-63

*State v. Melchior*, 381 N.E.2d 195 (Ohio 1978) ...........................368

*State v. Poulson*, 726 P.2d 416 (Okla. Crim. App. 1987) ...........................323

*State v. Ramseur*, 524 A.2d 188 (N.J. 1987) ...................................344

*State v. Taylor*, 818 P.2d 1030 (Utah 1990) .................................237

*State v. Thomas*, 768 S.W.2d 335 (Tex. App.--Houston [14th Dist.] 1989 ..168

*State v. Wagner*, 786 P.2d 93 (Ore. 1990) ...................................368

*State v. Williams*, 392 So. 2d 619 (La. 1980) .......................................344, 350

*Stewart v. State*, 686 S.W.2d 118 (Tex. Crim. App. 1984); ........................362

*Taylor v. State*, 939 S.W.2d 148 (Tex. Crim. App. 1996) ...........................324

*Territory v. Catton*, 16 P. 902 (Utah 1888)
   *rev sub nom Calton v. Utah*, 130 U.S. 83 (1889) ....................................351

*Ex Parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997) ............ 297-98, 302

*Van Tran v. Lindsey*, ___F.3d___, 2000 WL 622070 at 4
   (9th Cir. May 16, 2000) ............................................................................80

*Von January v. State*, 576 S.W.2d 43 (Tex. Crim. App. 1978) ...................268

*Wall v. State*, 715 S.W.2d 208 (Ark. 1986) .................................................323

*White v. Cole*, 880 S.W.2d 292 (Tex. App. --Beaumont 1994, writ denied) 311

*Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App. 1982) .........................168

## DOCKETED CASES

*Ex Parte John William King*, Cause No. 73,433 .........................................290

*Ex Parte John William King*, No. 49,391-01 (unpublished opinion) ....4, 81, 97

*Skinner v. State*, ___S.W.2d___, No. 72,131
   (Tex. Crim. App. May 21, 1997) .............................................................322

*State v. Berry, Jasper Co*, no. 8871 ..............................................................151

*State v. John William King*, Cause No. 8869 ....................................................2

## FEDERAL STATUTES

135 Cong. Rec. S13483 (1989).......................................................................308

18 U.S.C.  § 924(c) ........................................................................................221

   18 U.S.C.  § 1152.......................................................................................233

21 U.S.C.  § 841(b)(1)(A) ..............................................................................221

   21 U.S.C.  § 848(q)(4)(B) ............................................................................4

28 U.S.C. § 2244(b) ........................................................301

28 U.S.C. § 2254 *et. seq.* ............................................. passim

28 U.S.C. §§ 2261-2266 ...............................................288

Fed. R. Crim. P. 52(b)....................................................251

Fed. R. Evid. 702 ...........................................................198

U.S.C.A. Const. Amend.1 ....................................... 177-78

U.S. Const., Amendment V (Self-Incrimination Clause) ...........................100

U.S. Const. Amend. VIII ...............................................386

### STATE STATUTES

Ohio Revised Code §§ 2929.02-06 (as amended 1981)...................................... 368

Tenn.Code Ann. § 44-17-303(c), §39-14-201 .............................374

Tex. Code Crim. Proc. Ann. Art. 11.071 § 3(d) .......................290

Tex. Code Crim. Proc. Ann. Art. 11.071 § 3(d) .......................291

Tex. Code Crim. Proc. Ann. Art. 11.071 § 8(b) ......................294

Tex. Code Crim. P. Ann. Art. 37.071(b) .......................................196

Tex. Code Crim. Pro. 37.071 (2)(f)(2) .......................................207

Tex. Code Crim. Pro. Art. 37.071(e) (Vernon 1983) ...........................116, 344

Tex. Code Crim. Pro. art. 37.071(2)(g) ....................................207

Tex. Code Crim. Pro. Art. 37.071 .................................339, 361

Tex. Code. Crim. Pro. Art. 37.071(b) (Vernon's 1989) ..........................346

Tex. Code Crim. Proc. art. 37.071, §2(b) ...................................212

Tex. Code Crim. Proc. art. 37.071 § 2(e)(1) .........................................212

Tex. Code Crim. Proc. art. 37.071 § 2(c) .........................................212

Tex. Code Crim. Proc. Art. 11.071  § 2(d) ..............................................289

Tex. Penal Code  §6.02 ................................................................165

Tex. Penal Code  § 2.01 .......................................................212

Tex. R. Crim. Evid. 705(a) ............................................................324

Texas Code of Criminal Procedure Art. 31.03 .............................................279


Tex. Penal Code Ann.  §19.03(a)(2) (Vernon Supp. 1986) .............................2

## MISCELLANEOUS

American Bar Association, *Standards for Criminal Justice:*
  *The Defense Function,* Standards  ....................................................106, 388

American Psychiatric Association, *Draft Report*
  *on the Role of Psychiatry in the Sentencing Process*..............................201

Annotation, Propriety and Effect of Trial Court's Adoption of Findings
  Prepared by Prevailing Party, 54 A.L.R. 3d 868 (& Supp.)  ....................98

David J. Benson, *Constitutionality of Ohio's New Death Penalty Statute,*
  14 Toledo L. Rev. 77 (1982) ....................................................368

Black et al., *Science and the Law in the Wake of Daubert: A New Search*
  *for Scientific Knowledge,* 72 Tex. L. Rev. 715, 801 (1994) .................202

William J. Bowers & Glenn L. Pierce, *Arbitrariness and Discrimination*
  *under Post-*Furman *Capital Statutes,*
  26 Crime & Delinq. 563, 596 (1980)............................................371

Stephen Bright, *Counsel for the Poor: The Death Sentence Not for the*
  *Worst Crime, But for the Worst Lawyer*, 103 Yale L.J. 1832 (1995) .....101

Stephen B. Bright & Patrick J. Keenan, *Judges and the Politics of Death:*
  *Deciding Between the Bill of Rights and the Next Election in Capital*
  *Cases*, 75 Boston U. L.Rev. 759, 803-04 (1995)......................................86

*Bulletin of the American Academy of Psychiatry and*
  *the Law* 12.2 (1984) .......................................................186, 187

Robert J. Clary, "Voting for Death: Lingering Doubts About the
  Constitutionality of Texas' Capital Sentencing Procedure,"
  19 St. Mary's L.J. 353, 358-59 (1987) ....................................................339

Shelley Clarke, Note, *A Reasoned Moral Response: Rethinking Texas'
  Capital Sentencing Statute After Penry v. Lynaugh,*
  69 Tex. L. Rev. 407 (1990) ...................................................................367

David Crump, *Capital Murder: The Issues in Texas,*
  14 Houston L. Rev. 531, 532-33 & nn.7-8 (1977) ...................................361

George E. Dix, *The Death Penalty, "Dangerousness," Psychiatric Testimony,
  and Professional Ethics,* 4 Am. J. Crim. Law 151, 164 ........................199

Sheldon Eckland-Olson, *Structured Discretion, Racial Bias, and the
  Texas Death Penalty,* 69 Pol. Sci. Q. 853 (1988) ...................................371

*Federal Habeas Corpus Reform: Eliminating Prisoners' Abuse of the
  Judicial Process, 1995: Hearings on S. 3* .............................................288

Michael H. Gottesman, *From Barefoot to Daubert to Joiner: Triple Play
  or Double Error?,* 40 Ariz. L. Rev. 753, 755 (1998) ..............................197

Peter W. Huber, *Galileo's Revenge: Junk Science in the Courtroom* (1991) 199

King, Joyce, *Hate Crime: The Story of a Dragging
  in Jasper, Texas* (2002) .........................................................136, 140, 141

Michael Kuhn, Note, *House Bill 200: The Legislative Attempt to Reinstate
  Capital Punishment in Texas,* 11 Houston L. Rev. 410 (1974) .............361

Stephen W. MacNoll, Note, *A Constitutional Analysis of the Texas Death
  Statute,* 15 Amer. J. Crim. L. 69, 79-81 (1988) ....................................361

Henry Monaghan, Constitutional Fact Review,
  86 Colum. L. Rev. 229, 272 (1986) .........................................................98

Grant Morris, *Defining Dangerousness: Risking a Dangerousness Definition,*
  10 J. CONTEMP. LEGAL ISSUES 61, 85-86 (1999) ...........................203

*Judge Gunnar Norbye, Improvements in Statements of Findings of Fact
  and Conclusions of Law,* 1 F.R.D. 25 (1940) .........................................98

Note, *State Post-Conviction Remedies and Federal Habeas Corpus,*

12 Wm. & Mary L. Rev. 149, 170 ........................................................307

*On Lethal Injections and the Death Penalty,*
   12 Hastings Center Rep. 2, 2 (Oct. 1982)................................................377

Peter and Pinchu, <u>Mercy and Death Penalty: The Last Plea,</u>
   10 Crim. Just. J. 41, 49 (1987) ...................................................................236

*Proposals to Eliminate the Prejudicial Effect of the Use of the Word*
   *"Expert" Under the Federal Rules of Evidence*, 154 F.R.D. 537 (1994) 202

Stephen P. Smith, Note, *Unreliable and Prejudicial: The Use of Extraneous*
   *Unadjudicated Offenses in the Penalty Phase of Capital Trials,*
   63 Colum. L. Rev. 1249 (1993) .............................................................237

Stephen P. Smith, Note, *Unreliable and Prejudicial: The Use of Extraneous*
   *Unadjudicated Offenses in the Penalty Phase of Capital Trials,*
   93 Colum. L. Rev. 1249 (1993) .............................................................240

Jonathen R. Sorensen & James Marquart, *Prosecutorial and Jury*
   *Decision-Making in Post-*Furman *Texas Capital Cases,*
   18 N.Y.U. Rev. L. & Soc. Ch. 743 (1990-91)  ...............................371, 373

Temple-Raston, *A Death in Texas: A Story of Race, Murder, and a Small*
   *Town's Struggle for Redemption* (New York, 2002) ........................ 253-58

Peggy M. Tobolowsky, *What Hath* Penry *Wrought?: Mitigating*
   *Circumstances and the Texas Death Penalty,*
   19 Amer. J. Crim. L. 345 (1992) .............................................................361

Val. U.L. Rev. 381, 401 (1995) ..................................................................379

Wright & A. Miller, Federal Practice and Procedure  § 2578 (2d ed. 1995) .86

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **JOHN WILLIAM KING,** | ) | |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO. 1:01 CV-435** |
| **JANIE COCKRELL, Director** | ) | **Judge Richard A. Schell** |
| **Institutional Division,** | ) | |
| **Texas Department of** | ) | |
| **Criminal Justice** | ) | |
| **Respondent** | ) | |
| | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Petitioner John William King is currently confined in the Polunsky Unit of the Texas

Department of Criminal Justice, Livingston, Texas, in the custody of the Respondent, Janie

Cockrell, Director of the Institutional Division of the Texas Department of Criminal Justice.

Mr. King is confined in violation of the Constitution and laws of the United States, and files

this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 *et. seq.* in order to

secure the reversal of his capital murder conviction and sentence of death, and for his release

from confinement.

In support thereof, Mr. King would show the following:

# I.

## JURISDICTION AND PROCEDURAL HISTORY

Mr. King invokes the jurisdiction of this Court pursuant to 28 U.S.C. §2254 *et. seq.* Petitioner is a citizen of the United States and a resident of the State of Texas.

Petitioner is indigent and is unable to provide funds for any aspect of his representation, and has been granted *in forma pauperis* status by this Court.  He is currently unlawfully incarcerated by the Texas Department of Criminal Justice, Institutional Division, on death row at the Polunsky Unit in Livingston, Texas.  Mr. King was indicted for capital murder in violation of Tex. Penal Code Ann. §19.03(a)(2) (Vernon Supp. 1986) on October 30, 1998. Tr. 4.[1] [2]  He was convicted of capital murder (Tr. 248) and sentenced to death on February 25, 1999, in the 1st Judicial District Court of Jasper County, Cause No. 8869, Judge Joe Bob Golden presiding. Tr. 291, 293-96.[3]  On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence on October 18, 2000  in Cause No. 73, 433. *King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000).[4]

---

[1]  *See* Exhibit 1, Indictment in *State v. John William King,* Cause No. 8869, filed October 30, 1998 in the District Court of Jasper County.

[2]The  transcript (Clerk's Record) of the proceedings in this case  will be designated as "Tr." with  the page number following. The state  habeas corpus transcript will be designated "Habeas Tr."  The Reporter's Record  will be designated as "RR" with the number of the volume to the left and the page number to the right.

[3]  *See* Exhibit 2, Verdict, Judgment and Sentence of Death, *State v. King,*  Feb. 23 and 25, 1999.

[4]  *See* Exhibit 3.

Mr. John Heath, Esq. was appointed to represent Petitioner in his state writ application. Petitioner filed a timely state application for post-conviction writ of habeas corpus in state court on July 5, 2000. Habeas Tr. at 2-28.[5] The initial filing in this matter was the writ itself, with no requests made for expert or investigative assistance. Petitioner refused to sign the perfunctory writ application when it was presented to him. Habeas Tr. at 28. Mr. King filed with the trial court numerous letters, motions and requests advising them of the inadequacy of his representation, asking to proceed *pro se,* showing the existence of a conflict of interest, and asking for alternative counsel who would investigate his claims.[6] The State filed their answer to petitioner's writ application on December 20, 2000. Habeas Tr. 87-176. On January 8, 2001, the trial court issued an order determining that there were no controverted factual issues, and ordered both parties to file their proposed findings of fact and conclusions of law within 30 days of the order. Habeas Tr. at 86. Petitioner's attorney disregarded this order and failed to file any proposed findings of fact and conclusions of law. The State did file their proposed findings and conclusions on February 7, 2001. Habeas Tr. at 177-201. A mere two weeks later, the trial court simply signed off on the State's proposed findings and conclusions without altering a comma, and adopted them as their own.[7] Habeas Tr. at 200. This application for relief was denied by the Texas Court of

---

[5] *See* Exhibit 8, Application for a Writ of Habeas Corpus By A person Sentenced To Death.

[6] *See* Exhibit 10, Communications to trial court from petitioner. Habeas Tr. 37-79

[7] *See* Exhibit 9, State's Proposed Findings of Fact and Conclusions of Law, adopted verbatim by the trial court. Habeas Tr. 177-201.

Criminal Appeals on June 20, 2001. *Ex Parte John William King,* No. 49,391-01 (unpublished opinion).[8] No evidentiary hearing was held in the state habeas proceedings.

On June 28, 2001, Petitioner applied to this Court for appointment of counsel pursuant to 21 U.S.C. §848(q)(4)(B) and *McFarland v. Scott,* 114 S. Ct. 2568 (1994). On July 17, 2001, undersigned counsel was appointed for Petitioner. This is Mr. King's first application for federal habeas corpus relief.

Under the guidelines established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") Mr. King's petition for writ of habeas corpus was originally due on or before June 19, 2002. By its Order Granting in Part Emergency Requests for Equitable Tolling, filed on March 18, 2002, this Court ordered the statute of limitations for the filing of Mr. King's petition tolled, and ruled that it shall be considered timely filed if filed on or before August 19, 2002. Thus, this petition is timely filed.

## II.

## FACTUAL BACKGROUND

### A) Pre-trial.

Mr. King was arraigned on November 24, 1998 in the First District Court of Jasper, Texas, Hon. Joe Bob Golden presiding. He was charged with capital murder under § 19.03(a)(2) of the Texas Penal Code for "intentionally while acting together with Lawrence

---

[8] *See* Exhibit 4. The Texas Court of Criminal Appeals did not adopt the trial court's conclusion that the claim of ineffective assistance of counsel was waived by failing to raise it on direct appeal and the conclusion that trial counsel's failure to investigate and present an alibi defense could not be relitigated on habeas corpus. Exhibit 4 at p. 2.

Russell Brewer and Shaun Allen Berry and while in the course of committing or attempting

to commit kidnapping (sic), of James Byrd, Jr., did cause the death of James Byrd, Jr. by

dragging him on a road with a motor vehicle." Tr. at 4.[9]  Representing the State throughout

this matter were Mr. Guy James Gray, District Attorney of Jasper County, his deputy Mr.

Patrick Hardy and two federal prosecutors, Mr. John Stevens, and Mr. Jim Middleton; for the

defense were court-appointed counsel Mr. C. Haden Cribbs and Mr. Brack Jones. 2 RR 1.

Petitioner was indicted by a grand jury for capital murder and pled not guilty. 2 RR 3.  There

was no written transcription of the grand jury proceedings. 3 RR 103.

### i) Motion for change of venue.

On December 14, 1998, the trial court heard the defense's motion for a change of

venue.  3 RR 2.[10]  Newspaper accounts of the murder were received in evidence.  The

defense called **Nelda Woods,** a resident of Jasper, Texas, who stated that she did not think

Mr. King could get a fair trial in Jasper because of the extensive publicity.  3 RR 11.

Property taxes have risen because of the trial expenses.  3 RR 12.  **Randy Walker,** an

attorney in Jasper, the original attorney appointed for petitioner, also testified that he did not

think Mr. King could get a fair trial, due to the extensive publicity.  3 RR 21. People in other

---

[9]  *See* Exhibit 1, indictment of Petitioner.

[10]  The motion for change of venue is included herein as Exhibit 5, as an example of the extremely perfunctory motion work done by the defense in this case.  Although many motions were filed, most were only one to two pages in length. As to the change of venue motion, about one page in length without the required affidavits, it gave no specific factual or legal grounds in support of the request. The entire transcript, which includes all defense and prosecution motions, proposed charges and court orders,  is only a little over 300 pages, extremely short for a Texas capital murder case.

counties would care less about "the effect this crime has had on the reputation of this community; and [they] ...would care less about how this crime may affect Jasper economically in the future." 3 RR 22. His impression was that there was a "real anger here in this community about this crime." 3 RR 26. **Sheriff Billy Ernest Rowles, Sr.,** the sheriff of Jasper County, testified that in his opinion, the petitioner could receive a fair trial in Jasper. 3 RR 32. The sheriff had made statements that, in his opinion, it was a racial hate crime. 3 RR 34. No other case in his experience had as much media coverage of federal involvement. 3 RR 37-38. Senator Kay Bailey Hutchison, Rev. Jessie Jackson and Al Sharpton were at the victim's funeral. 3 RR 39. In his opinion, Jasper County was undergoing a healing process.[11]

**Walter Gene Diggles,** executive director of the Deep East Texas Council of Governments, testified that he thought Mr. King could receive a fair trial in Jasper. 3 RR 47. **Kathleen Hawkins,** whose husband owned a drugstore in Buna, Texas, and was active in Democratic Party politics, testified that she thought a fair jury could be picked here in Jasper. 3 RR 53. **Harold Lee Kennedy,** a probation officer and former judge, also thought that a fair jury could be found in Jasper. 3 RR 59. **Judge Joe Folk,** a county judge of Jasper County, testified similarly. 3 RR 65. This case had received more publicity than any other he had seen during his tenure. 3 RR 67.

At the conclusion of the evidence, the defense offered no argument on the motion for

---

[11] As shown herein, the glare of publicity and the desire of this town to "heal" in fact made a fair trial for petitioner impossible in Jasper.

-6-

change of venue. 3 RR 70.

The defense also stated that at this time, it had no present plans to have Mr. King interviewed by a psychiatrist. 3 RR 73. The prosecution stated that they intended to call Dr. Edward Gripon at the punishment phase of the trial. 3 RR 73.[12] The defense also stated that there was no intent to seek an insanity defense. 3 RR 74. The prosecution agreed that they would notify the defense if any deals were made with prosecution witnesses. 3 RR 76. The State agreed to give the defense any exculpatory information on witnesses, with the exception of any rebuttal witnesses, and the Court granted this motion. 3 RR 77-80, 89. A defense motion to inspect and test physical evidence was granted and the State agreed that they would honor their obligations to turn over favorable evidence under *Brady v. Maryland,* 373 U.S. 83 (1963).   3 RR 85, 87.

As an indication of the degree of federal involvement in this case, about 200 FBI agents were talking to people "that may or may not have provided something helpful to the defendant."   3 RR 86. On the morning of this motion hearing, Federal prosecutors were sworn in as assistants . 3 RR 87. The defense stated that it "may be necessary then to make a motion for continuance at a later date to postpone a January tentative trial date because we don't have information, we don't have the funds of the FBI to chase down every lead across the country, across the State of Texas." 3 RR 88.

ii) **Motion to recuse trial judge.**

---

[12]   Thus the defense had notice well before the trial that this "psychiatric" testimony was to be offered by the State at the punishment phase of the trial.

On January 6, 1999, Hon. Patrick Clark presided over the defense's motion to disqualify the trial judge. 4 RR 4. Hon. Joe Bob Golden refused to disqualify himself. 4 RR 4. The defendant did not want to appear and defense counsel proceeded without him. 4 RR 5. Mr. King did not appear because he said his attorney was "a piece of shit" and was dissatisfied with his representation. 4 RR 6-7.

**Judge Joe Neal Folk** testified that, as a result of this case and other capital cases pending in Jasper County, property taxes had to be raised about ten percent (from 39 cents per hundred dollars valuation to 43 cents). 4 RR 9-10. The motion to recuse was made on the basis that Judge Golden was a property owner in Jasper County. The average tax raise was about $5.10 per citizen of the county. 4 RR 17. The motion to recuse was denied, and the petitioner's counsel noted their exception under the due process clause and the Texas Constitution. 4 RR 23.

### iii) Additional pre-trial proceedings.

Defense counsel Mr. Cribbs also filed a motion to withdraw as petitioner's counsel, based on personality conflicts. 5 RR 5; Tr. 143-44.[13] Mr. King told the court he had "written numerous letters explaining the situation" to the court and the court had received two of them. 5 RR 5. The motion to withdraw was denied. 5 RR 6.

### B) Jury selection.

Jury selection began on January 25, 1999, in the First Judicial District Court of Jasper

---

[13] *See* Exhibit 6.

County, Texas. 6 RR 3.[14] Prior to jury selection, there had been rallies in Jasper by the Ku Klux Klan and the Black Panthers, and many if not all of the prospective jurors were aware of that. *See, e.g.,* 9 RR 57. During jury selection, "[i]t was a media circus getting into this courthouse..." 9 RR 38.[15]

Both sides announced ready for trial. 6 RR 3. The State, in its opening statement, outlined their theory of the case. 6 RR 23. The prosecutor claimed the victim, James Byrd, Jr. was walking on Martin Luther King Drive in the early hours of June 7, 1998, when he was picked up by three whites in a pickup, driven around and then to the Huff Creek Road, and then on a logging road. 6 RR 23-25. There was allegedly a scuffle in a clearing, and then the victim, while still alive was chained to the pickup and dragged to his death. 6 RR 25-26.

The prosecutor, in his initial statement to the jury panel, noted that there had been a lot of media coverage of the case, including what the court termed an inaccurate report in *Time* magazine that armed militia camps in Jasper County produced 200 soldiers a year to work for white supremacists. 6 RR 32. The prosecutor also mentioned that newspaper accounts said that Bill King's cigarette lighter was found at the scene of the crime, but the "crime scene was spread out over three miles...[and the lighter], someone could have left it on the fender and it fell off as you're driving down the road." 6 RR 33. The State also commented on Mr. King's tattoos in this preliminary statement: "are we talking

---

[14]   On January 11, 1999, a gag order was imposed on the district attorney's office. 5 RR 4.

[15]   The trial court ruled that no photographs were to be taken of the members of the jury. 6 RR 28.

about...something that's more defining of his mind-set and how he thinks?" 6 RR 34.

The prosecutor also commented on the death penalty: "I'm not a great fan of it myself, but there are times and circumstances where it seems to me to be the only appropriate and right sentence." 6 RR 35. The prosecutor then asked the jurors to think about how they felt about the death penalty. 6 RR 36. The defense, in their initial statement to the jury panel, stated that "it's also your right not to believe in the death penalty." 6 RR 49.

Many prospective jurors commented on the fact that the community was biased against petitioner and that there was a feeling that he should be sentenced to death. *See, e.g.,* 8 RR 166-67; 9 RR 19-20. Other prospective jurors commented on the fact that there was, in the Jasper community, a feeling of "hang them high" toward the defendants. One of the prospective jurors, Mr. Tommy Reeves, had heard the crime was drug-related. 14 RR 41. Another prospective juror, Mr. Samuel Hennington, had a misdemeanor theft conviction that he did not tell anyone about and he was excused. 15 RR 5.

Details of the jury selection process are discussed in more detail, *supra,* in the relevant individual issues. The jury was chosen on February 10, 1999. 16 RR 1-16.[16]

### C) Trial.

Mr. King's trial began on February 16, 1999. Various pre-trial motions were ruled upon first. Defense counsel renewed their request for a change of venue, based on daily

---

[16]   During the trial, United States Attorneys Michael Bradford, Jim Middleton and John Stevens were assisting the State at counsel table. 6 RR 42.

publicity in the local and Houston newspapers.  17 RR 2. The trial court denied this motion. 17 RR 3.    The prosecution removed the words "and knowingly" after the word "intentionally."  17 RR 6.  A defense motion *in limine* to exclude various extraneous crimes was overruled.  17 RR 7.  The jury was sworn and admonished.  17 RR 8-10.

King was charged in a grand jury indictment that on or about June 7, 1998 he acted together with Lawrence Russell Brewer and Shawn Allen Berry "and while in the course of committing or attempting to commit kidnaping of James Byrd, Jr., did cause the death of James Byrd, Jr., by dragging him on a road with a motor vehicle against the peace and dignity of the state."  17 RR 10-11.[17]  King pled not guilty to the charge.  17 RR 11.

### i) The opening statement by the State.

Mr. Guy James Gray, Jasper County District Attorney, gave the opening statement for the State.  17 RR 11-17.  King, Berry and Brewer allegedly lived together at the Timbers Apartments in Jasper.[18]  According to one witness, Keisha Atkins, on the morning of June 7, 1998, they left their apartment at about 1:30 or 1:45 AM.  17 RR 12.  Allegedly Berry was driving, Brewer was in the center, and King was on the right.  17 RR 12.  Another witness, will establish that the victim Mr. James Byrd was in the back of the vehicle at about 2:30 or 2:45 AM, the prosecutor argued.  17 RR 12.

---

[17]  *Also see* Exhibit 1, Indictment.

[18]  Later testimony also showed that Berry's brother, Lewis Berry, also lived in the apartment and stored clothes there.

A cigarette lighter with the word "Possum" on it, and a triangular symbol that is three K's put together and two S' in the form of a lightening bolt was allegedly found at the scene of the crime. 17 RR 12-13.[19] A tool with "Berry" engraved on it was found at the scene of the crime. *Id.* The tire treads allegedly matched Berry's truck, the State argued, and fibers from Byrd's clothing were found in the truck. 17 RR 13. Spots of blood that matched Byrd's were found underneath the truck. *Id.*

From the apartment, there were three pairs of shoes that allegedly belonged to these men, with tiny specks of blood on them, and the blood matched Byrd's. 17 RR 13-14.[20] Mr. Gray argued that there were cigarette butts found at the crime scene with the suspects' DNA on them. 17 RR 14. One beer bottle found at the scene had Brewer's DNA on it. *Id.*

Motive will be established "by friends and acquaintances, by the things Bill King has said to friends" (17 RR 14) and King's tattoos, according to the State. *Id.* Mr. Gray added that King belongs to a group called the Confederate Knights of America. 17 RR 14.

The prosecutor argued that "[h]e's also a Neo-Nazi", and has the Nazi swastika tattooed on him, and a tattoo of a black man hanging from a tree. *Id.* He has the word "Satan" tattooed on his body. *Id.* Other tattoos reflected his hate and anger, according to the prosecutor. *Id.*

According to the State, a third area of motive will be established from writings found in his apartment, that show his intention to form a hate group in Jasper, Texas. 17 RR 15.

---

[19]   "Possum" was King's nick-name in prison. *Id.*

[20]   This was incorrect, as blood was not found on all three pairs of sandals.

King allegedly had the constitution, by-laws, code of ethics, and membership applications. 17 RR 16. "His group was to be called the Texas Rebel Soldier Division of the Confederate Knights of America." 17 RR 16.

King wanted to do something dramatic to gain recognition for his group and to attract new members, according to the prosecutor. 17 RR 16. The State admitted that for this to be a capital offense, there has to be a kidnaping, and that the victim was alive when he was bound up. 17 RR 17.

In response to this, the defense made absolutely no opening statement, but elected to give it later. 17 RR 17.[21]

### ii) The State's case at guilt/innocence.

**Billy Ernest Rowles, Sr,.** the sheriff of Jasper County, Texas, testified that he received a call to go to the Huff Creek area on June 7, 1998. 17 RR 20. Some units had found the head and torso of Mr. Byrd, and other units had located the lower torso. 17 RR 20-21. The upper torso was found close to a cement culvert, in a ditch. 17 RR 21-22. A mile further down the road the lower torso was found, near a wood frame church and a cemetery. 17 RR 22. They later found a billfold "on the path that someone was drug on." 17 RR 23. The billfold had James Byrd Jr.'s identification in it. 17 RR 24.

There was a massive amount of trauma to the body, and it appeared the body had hit the culvert and the left shoulder and the head separated. 17 RR 25. The sheriff thought the

---

[21] No such statement was ever given by the defense.

body might have been dragged underneath a car as a result of a hit and run accident. 17 RR 25. Rowles followed the trail for two or three miles, from where the upper torso was found. 17 RR 26. The drag marks were outside the tire marks, which meant that the body had been dragged. 17 RR 27. At this point, Sheriff Rowles knew it was a murder. 17 RR 28. Tire casts were then taken. 17 RR 31.

The investigators came to a place where there were good tire tracks, footprints and a nut driver wrench. 17 RR 32. The word "Berry" was on the wrench. 17 RR 33. Not far from where Byrd's billfold was found, they found beer bottles, cigarette butts, a cigarette lighter, a watch, a cap and other items. 17 RR 33. The cigarette lighter had the word "Possum" engraved on it along with a triangle with three K's. 17 RR 36. Tennis shoes were also found. 17 RR 48. The grass was laid down there, and the ground had been disturbed and it looked as if something had taken place there. 17 RR 34. A call was made for the Jasper Police Department for help with the crime scene investigation. 17 RR 36, 50.[22]

The investigators thought several people were involved. 17 RR 37. When they saw the K.K.K. emblem on the cigarette lighter, they thought they had a motive. 17 RR 37-38. As a result of information they received, a grey step-side truck with three people in it, with Mr. Byrd in the back, was mentioned as possibly being involved. 17 RR 38. Someone thought of Shawn Berry, who had a similar pickup truck. 17 RR 39.

Berry was arrested in Jasper on a couple of traffic violations and taken to jail. He

---

[22] In all, 10 or 12 law enforcement agencies were ultimately involved in the investigation. 17 RR 53.

-14-

consented to a search of the truck, and the rest of the nut drivers that went with the tool set were found, and blood was tested underneath the truck and it came back positive. 17 RR 40. The sheriff found out that Berry was living in an apartment with John William King and Russell Brewer. 17 RR 40. Someone said that "Possum" was King's nickname when he was in prison. 17 RR 40, 81, 88. A search of the apartment was made, and some racial writings were removed. 17 RR 41.

The sheriff went to the Beaumont office of the FBI on the day after the discovery of the body. 17 RR 41, 52. The sheriff was "brand new" and "didn't even know the definition of a hate crime but I knew somebody had been murdered because he was black and it was a bad murder." 17 RR 41.

The defense objected to the introduction into evidence of pictures marked as State's Exhibit 1, as being irrelevant, inflammatory and overly gruesome, under Texas Rules of Evidence 401, 402 and 403. 17 RR 54, 66. Court overruled the objection, and ruled that the pictures show intent, motive and a state of mind. 17 RR 56-57, 59. The jurors were each given a copy of the pictures. 17 RR 61. The sheriff described the pictures. 17 RR 61-66.

**Michelle Marie Chapman**, eighteen years old, testified that she had known King from before he went to prison and exchanged letters with King when he was incarcerated from 1995 through 1997. 17 RR 71-72, 84. Three letters were offered into evidence, but the defense objected on the grounds that they related to extraneous matters, were irrelevant and immaterial, and their probative value was outweighed by their prejudicial value. 17 RR 74. The letters were admitted. 17 RR 76.

-15-

In the letters,  King says he has a tattoo of Woody Woodpecker in a Klansman's uniform making an obscene gesture. 17 RR 79. There's also  a tattoo on the back of King's head; and another one with a black man hanging, on his arm.  17 RR 79.  In another letter dated February 20, 1996, King talks about "[t]he niggers have this Muslims shit, blood crips and Black Panthers.  These ho ass spics have the Mexican Mafia....us Aryans have the Aryan Brotherhood, Aryan Circle, Confederate Knights of America,  K.K.K., Aryan Legion, White Knights, Confederate Hammer Skins, Skin Heads..." 17 RR 80. Chapman  was 15 when she received this letter.  *Id.*  Also in this letter, King states "It's my opinion that any race trading (sic) bitch should be hung alongside the nigger she fucked.  White is right." 17 RR 80.  In the third letter, King stated "What do I have to look forward too [sic] in returning to Jasper? A town full of race traitoring [sic], nigger loveing [sic] stupid and blind to the pride of their race and heritage that they should be hung on the limb adjacent to their nigger loveing [sic] man." 17 RR 81.  King also wrote, "Who knows, maybe the Jews and niggers will kill one another before long." 17 RR 81.

Chapman saw King when he was released from prison in June of 1997. 17 RR 83. He came to her house and he showed her his tattoos, and he seemed proud of them, including the one of the black man hanging. 17 RR 83-84.  He did not have the tattoos before going to prison. 17 RR 84. Chapman  gave the FBI all 19 of the letters King wrote while in prison. 17 RR 85. The letters became more racist while he was in prison. 17 RR 87. Chapman was only a friend to King, and went out with him only once before he went to prison. 17 RR 85, 87, 88.

-16-

**Tommy Robinson,** a Jasper County Sheriff's Department investigator, testified that on the morning of June 7, 1998 he received a call about a body on Huff Creek Road. 17 RR 90. There was a trail and a body was found that was missing its right arm head and neck. 17 RR 92. There was a laceration just above the ankle on each leg. 17 RR 93. The body was nude, the underwear pulled down to the ankles. 17 RR 93. State's exhibit 6 (socks) and 8 (pants) were identified and admitted into evidence. 17 RR 94-95.

The head and shoulders were found about a mile back toward Highway 1408, at the end of a culvert. 17 RR 95. The witness thought that the body was severed when it hit the culvert. 17 RR 96. There was blood and flesh tissue on the trail that led from the logging road. 17 RR 97.

Dentures (State's exhibit 9) and a key ring (State's exhibit 10) were determined to have belonged to James Byrd, Jr. 17 RR 100-101. The keys were determined to belong to Byrd because they fit his door and mailbox. 17 RR 101.

The old logging road intersected with Huff Creek Road. 17 RR 103. Huff Creek Road is off Farm Road 1408, a left turn off 1408. 17 RR 158. The investigators went up the logging road and found a can of "Fix A Flat" (State's exhibit 12), shoes (State's exhibits 13 and 16) and shirts (State's exhibit 14 and 15). 17 RR 103-110.[23] They also found a "longneck" bottle of beer (State's exhibit 17) and a nut driver with "Berry" written on it

---

[23]  These exhibits were tagged and bagged by the FBI. 17 RR 17 RR 10. The defense objected to the bag identification being received as evidence and they were admitted minus the accompanying written tags. 17 RR 108.

(State's exhibit 18). 17 RR 110-114.[24]  Casts of tire tracks were made (State's exhibit 19 and 20) and an impression of a shoe print near where the nut driver was found. (State's exhibit 21) 17 RR 114-117.  The wallet (State's exhibit 22) and a wristwatch (State's exhibit 23) were also introduced in evidence.  17 RR 117-119.

When they found the watch, they came to a scene where the grass was beaten down and some underbrush broken.  17 RR 121.  Fragments of a cigarette butt were found at the scene (State's exhibit 26);  a female's watch (State's exhibit 27; 17 RR 124-125); a black paint spray can (State's exhibit 28; 17 RR 127); and a cigarette lighter  (State's exhibit 29; 17 RR 128).  Mr. Robinson identified the lighter as belonging to King.  17 RR 129.  A button was also found, which came from one of the shirts found earlier.  (State's exhibit 30).  17 RR 129-130.  The wrench and cigarette butt (State's exhibit 31) and a cigarette pack (State's exhibit 32) and the torque wrench (State's exhibit 33) were found at the "fight" scene.  17 RR 132.[25]  A ball cap with "San Francisco" on it, belonging to the victim, was also found at the scene (State's exhibit 34). 17 RR 133-34.

Robinson photographed the area around the body.  17 RR 140.    The FBI came in subsequently and picked up some items.  17 RR 147.  There were three or four other beers bottles and a CD that were not introduced.   17 RR 147.[26]   Robinson did not dust for

---

[24]  The nut driver was not found near the "fight scene."  18 RR 197.

[25]  The term "fight scene" was not based on any personal observation  of a fight.  17 RR 145.

[26]  Lewis Berry's fingerprint was found on the CD.  18 RR 134, 136.

-18-

fingerprints on these items of evidence.  17 RR 150.  No other cigarette butts were recovered. 17 RR 152.

**George Matathay**, a small businessman in Jasper who ran "Billy's Old Fashioned Barbeque" near the courthouse, testified he saw Mr. Byrd on the evening he was killed.  17 RR 164, 172.  He was attending an anniversary party which was also attended by Byrd.  17 RR 166.  Byrd was wearing  a cap and jacket, and a long sleeve shirt and tennis shoes.  17 RR 167.  Matathay left the party at about 1:30 or 1:45  AM, and Byrd asked for  a ride and the witness told him his truck was at home, and he didn't want to offer Byrd a ride because Matathey  had been drinking too much.  17 RR 168.  A friend dropped him off at Bowie Street and they passed Byrd walking down Bowie Street alone.  17 RR 168.

The party was on the west side of town, at Jimmy Maze's house.  17 RR 171. Everyone was drinking at the party.  17 RR 171.  Matathay had caught a ride over to the party with Samuel Williams and arrived at about 10:30 or 11:00 PM.  17 RR 172.  Byrd was drinking but he wasn't intoxicated, but he usually gets pretty drunk.  17 RR 173.

**Steven Scott** testified he had been at a club in Beaumont with a friend, and on the night of June 7th, at about 2:15 or 2:30 AM he was driving home to his residence on Martin Luther King Drive after dropping the friend off. 17 RR 177-78.  Scott saw Byrd, whom he knew, and thought about picking him up, but didn't  because his conscience told him not to. 17 RR 179.  This was about a half-mile from the church, about a quarter mile from the Ramada Inn.  17 RR 187.  It looked like he had been drinking.  17 RR 179.  Scott arrived home at about 2:30 AM.  17 RR 180.  As Scott's mother opened the door, he saw Byrd

-19-

passing by on the back of a truck, an old model step-side pickup, probably gray. 17 RR 180, 183. The three people in the truck were white. 17 RR 181-182. One appeared to have long hair. 17 RR 182.[27]

Scott talked to the police the next day. He identified the truck in state's exhibit 35 as looking like the truck he saw that night. 17 RR 184. Scott had seen the person who worked at the movies, Shawn Berry, around town. 17 RR 184-85.

**Mary Verrett**, the sister of the victim, who lived in Houston, testified that she was giving a bridal shower for her niece, and Byrd came over in the afternoon to help decorate the building. 17 RR 192. Byrd changed into some clothes Verrett had brought for him, including the baseball cap. 17 RR 193. She identified the shirts, the watch, and the NBA jersey Byrd was wearing when he died. 17 RR 194. The last time she saw Byrd was about 5:30 or 5:45 PM at their parent's house, when she left for Houston. 17 RR 195.

Byrd was disabled as he had seizures that required medication. 17 RR 196. He received a government check for the disability. 17 RR 197. Byrd used to live with his parents but had his own apartment. 17 RR 197. Ms. Verrett had seen him drunk before. 17 RR 197.

**Ralph Nichols**, a constable in Precinct 2, Jasper County, talked with King in the early morning hours of June 8, 1998, and received a signed consent to search his apartment (state's exhibit 38). 17 RR 200. King had been read his Miranda warnings and understood them. 17 RR 201. King had told Nichols he could search the apartment and King said he had nothing

---

[27]   Brewer had long hair. 18 RR 9.

to hide. 17 RR 202. King lived at the Timbers Apartments, on the south side of 190 right across from Wal-Mart. 17 RR 202.

Exhibits 39 through 41 were offered into evidence, although the defense did not know what they were. 17 RR 204-07. The court admitted state's exhibit 41 for the limited purpose of determining motive or intent or state of mind. 17 RR 212. State's exhibit 42, photos of tattoos, was admitted over defense objections of due process and First Amendment violations. 17 RR 214. State's exhibit 43, the K.K.K. book, was also admitted. 17 RR 214-15.[28] They were all found in King's apartment. 17 RR 215, 217. The court admitted them for the limited purpose of determining the defendant's state of mind, intent or motive, but declined to make the instruction that they needed to be believed beyond a reasonable doubt. 17 RR 218-19.

The initials "L.B." were on one of the shoes, which could have stood for Lawrence Brewer or Lewis Berry, Shawn Berry's brother who was also staying at the apartment. 17 RR 222, 225. Some "longneck" bottles of Coors Light and Bud Light were found in a cooler. 17 RR 222. There was a defense objection to exhibit 48, a picture found at the apartment, on the grounds that it was protected by the First Amendment, but this was overruled. 17 RR 223. No fingerprints were taken from the apartment. 17 RR 226. It was the witness' opinion that a notebook, photo album, and black sandals belonged to King. 17

---

[28] The Ku Klux Klan book was checked out of the Jasper High School Library on January 13, 1986. 17 RR 245. The book was actually a critical history entitled "The Ku Klux Klan, A Century of Infamy" by William Pierce Randel. This was never mentioned by the defense.

RR 232-33.

**Joe Sterling,** an investigator with the Jasper County Sheriff's Office, took part in the search of King's apartment on June 8, 1998. 17 RR 234. He took the photo album, a green Mead notebook, a green Ku Klux Klan book, and a red Lamar folder into his custody. 17 RR 236. State's exhibit 49 depicts three Klansmen riding on horses, a noose, a man with a suit with a gun and K.K. on the front, and kneeling black people. 17 RR 239. The defense objected to the tattoo evidence coming in, under First Amendment grounds, but that was overruled. 17 RR 241.

State's exhibit 50 was an application to the Confederate Knights of America, signed by John W. King, captain of the Confederate Knights of America, Texas Rebel Soldiers. 17 RR 242. It states that Texas Rebel Soldiers was started on July 4, 1998, but King was in jail then. 17 RR 243. King signed himself as the president of the Confederate Knights of America. 17 RR 244. King hoped to begin a chapter of the Confederate Knights of America in Jasper, according to this witness. 17 RR 244.

**Rich Ford,** a detective with the Jasper Police Department, testified that he was dispatched to the arrest of Shawn Berry on June 7, 1998. 18 RR 3. Berry was stopped at Green Tree Plaza right off Highway 96, for an expired registration. 18 RR 4, 13. There was also information that a truck matching the description of Berry's might have been used in the murder. 18 RR 4. Berry's truck was turned over to the FBI. 18 RR 11. Ford also photographed King for the identification of his tattoos.

**Keisha Atkins,** age 21, testified that she worked for Security Finance in Woodville,

and knew King for eight or nine years.  18 RR 16-17.  She was in a common-law marriage with another man, whose child she was carrying.  18 RR 38.  Before King's arrest, she had not seen him for a few years but had talked to him on the phone.  18 RR 18.  King called when he got out of the penitentiary, and they called each other for a few weeks before he was arrested.  18 RR 18.  On Saturday, June 7, 1998 she had come to Jasper because King had asked her to.  18 RR 19.  She arrived at his apartment at about 10:30 PM, and Brewer was also there.  18 RR 20.  King showed her his tattoos and was drinking beer with Brewer.  18 RR 20.  While Atkins was at the apartment, Kylie Greeny, King's girlfriend, came to the door twice, but was not allowed to come into the apartment.  18 RR 21.  Atkins smoked some Marlboro Reds with King and noticed  his lighter with "Possum" on it.  18 RR 44.  Berry came to the apartment later.  18 RR 24.

Atkins did not receive King's prison letters because she had moved and her mother intercepted them.  18 RR 22.  King was wearing scandals that night, identified as exhibit 45-B.  18 RR 23.  Atkins left the apartment about 1:30 or 1:45 AM.  18 RR 24.[29]  All three men got into Berry's truck and left the parking lot.  18 RR 25.  Atkins thought Berry was driving, Brewer was in the middle, and King was on the passenger side.  18 RR 26.  They said they were going to meet some girls.  18 RR 34.  The witness did not remember if King left wearing sandals, although she gave a statement to that effect.  18 RR 46.  King may have been smoking when he left and could have put the butt in the truck ashtray.  18 RR 48.

---

[29]   In her first statement to the police, Atkins said that she left at 1:45 to 2:00 AM, but changed the time estimate when the FBI later told her that some policemen she had seen who had pulled over a motorist had done that earlier than her first estimate.  18 RR 30-31; 42-43.

-23-

Atkins had a romantic relationship with King when she was younger, and she thought he was a pretty nice guy. 18 RR 27. Before King went to prison, he did not espouse any racial sentiments at all. 18 RR 27. Atkins did not know whether there was another pair of sandals in the apartment, and was only shown a picture of the sandals, not the actual shoes. 18 RR 32. According to the witness, Lewis Berry also occasionally stayed at the apartment. 18 RR 33.

Atkins talked with King later that night, at about 5 or 5:30 AM, by telephone. 18 RR 35. He was in a normal mood, and didn't seem excited. 18 RR 36. King called her the next night around midnight, and said he wanted to see her. 18 RR 37. Atkins had the impression that if she had stayed at the apartment, King would not have left with the others. 18 RR 39.

**Kenneth Kempf**, a special agent with the FBI, was the team leader of the agents who went to King's apartment at 801 West Gibson, Apt. 214, to conduct the search pursuant to the search warrant. 18 RR 51.[30] They entered the apartment at 9:30 AM on June 9th. They recovered a pair of Polo boots, size 9D,  in the bedroom, some 20 photographs, some of which depicted tattoos.[31] 18 RR 53-60. There were also a pair of dark brown sandals, size 9 and a half, that were found in the bedroom, and marked as State's exhibit 55 and 56.  18 RR 60-61.    Similar sandals, size 10, were marked as State's exhibit 45. 18 RR 61.

---

[30]  Originally, there was a tentative list of about 60 FBI agents who might testify in this case. 18 RR 118.

[31]  The defense had an ongoing objection to the tattoos as protected by the free association clause of the First Amendment and the equal protection due process clause of the Fourteenth Amendment. *See, e.g.,* 18 RR 58.

-24-

Numerous papers with King's name on them were seized which were objected to by the defense but admitted. 18 RR 62. They found two wallets in the apartment. 18 RR 91. King had three driver's licenses and two were expired. 18 RR 91.[32]

This witness was also out at the logging road the day before he was at King's apartment. 18 RR 66. There was a brown substance in the dirt and sand of the road that had soaked in. 18 RR 67, 79. Some of this was swabbed as evidence. 18 RR 81. The dragging began about 50 feet from the clearing in the grass. 18 RR 68. Kempf walked the distance from the original discovery of the torso back to the logging road area, and then down the logging road to the clearing site. 18 RR 73.

**Tim Brewer,** an FBI agent with the Beaumont, Texas office, testified that he went into the apartment on July 16, 1998, a month after the murder, because a witness statement had identified some clothing Berry was wearing on June 7, 1998. 18 RR 103. This time the landlady, Mrs. Clark, let them in, as the apartment was vacant after an eviction notice  had been served. 18 RR 105. There was a brownish substance on some Ralph Lauren Polo jeans that might be blood, and a long sleeve denim shirt. 18 RR 107.

He later found out that King's shoe size was nine and a half and Berry's was a size nine. 18 RR 111, 127. Brewer was a size seven. 18 RR 112. Lewis Berry was a size ten. 18 RR 124, 131.[33]   On June 8, Brewer's foot was severely bruised and he had trouble

---

[32]   All the evidence, which filled a U-Haul trailer, was taken to Houston. 18 RR 96-98.

[33]   The sandals that had blood on them,  exhibit 45, were size 10 sandals. 18 RR 61. However, it was determined that King's shoe size was nine and a half, and similar-brand size nine and a half sandals were also found in the apartment (State's exhibit 55 and 56) that did not

walking. 18 RR 113. To his knowledge, there was consent for agent Kempf's search. 18 RR 117. Christie Marcontell, Shawn Berry's girlfriend, and Lewis Berry were at the apartment trying to have the contents released to them, in particular a television. 18 RR 120. Lewis Berry was eliminated as a suspect because of an alleged alibi. 18 RR 135.

**Curtis Frame** testified he was with the Jasper County Police Department on June 7, 1998, when he responded to a call for assistance. 18 RR 138. He went to the Huff Creek Road area where he saw the right arm and shoulder and head of a black male. 18 RR 139. His opinion was that the body had been dragged. 18 RR 140-41. Tire casts were made. 18 RR 144. He later took fingerprints of the victim and determined that he was James Byrd, Jr. 18 RR 146.

At the clearing, he saw beer bottles, a Marlboro cigarette pack, a lighter, two watches, a torque wrench, and blood in the dirt. 18 RR 149. Frame had no doubt that the body was drug down the logging road and it ended up at the cemetery. 18 RR 150.

The search of Berry's truck turned up some tools of the same brand found at the crime scene, and a blood stain. 18 RR 154. There was a tire track that was near the Faulks' home. 18 RR 160-61. No hair or blood samples were taken from the culvert. 18 RR 170. There was a heavily-stained area of blood between where the head and the torso were found. 18 RR 173. The evidence was bagged and tagged at the scene of the crime. 18 RR 176-80.

---

have any blood on them. 18 RR 61. Lewis Berry, who frequented the apartment and had clothing there, was a size ten. 18 RR 124, 131. Thus, the size 10 sandals with the victim's blood on them, the major incriminating evidence against the petitioner, were not even King's size, and this was never challenged by the defense, nor was the jury ever informed of this fact.

Evidence was first collected from the road, then the truck and then the apartment. 18 RR 187. There were some items from the apartment that were not turned over to the FBI, including a roll of rope, a pistol, a Buck knife, a letter to Shawn Berry, VHS tapes and food receipts. 18 RR 189-90. The state took blood samples from all defendants. 18 RR 201-02.

**Mark Young,** an FBI agent, testified he directed the team searching the truck involved in this case. 19 RR 29-30. Several items were identified, such as stains that appeared to be blood, and tissue. 19 RR 33-34. The truck tires were taken into evidence, the left rear wheel of the truck, a floor mat from the interior of the truck. 19 RR 35-39. There were blood spatter stains underneath the truck. 19 RR 40. There were also indications that a chain had been in the back of the truck. 19 RR 41. The tailpipe of the truck was introduced into evidence (19 RR 43). All the evidence was sent to Houston. 19 RR 49-50.

**Sterling Linbaugh,** an employee of the Jasper Exxon gas station, testified that on June 7, 1998, at about 6 PM a man, identified as Shawn Berry, and a woman came in to have a flat tire changed. 19 RR 91, 95. They drove up in a Grand Prix and had a truck tire in the car. 19 RR 92. They drove off with the new tire and the old one was put in a junk pile behind the station. 19 RR 92. Later that evening, Linbaugh was asked to retrieve the tire by the Jasper County Sheriff's Office. 19 RR 93. **James Havard,** a Jasper County Sheriff's Dept. investigator, received the tire from the Jasper Exxon station, and later released it to the FBI. 19 RR 187-88.

**Ben Meyers,** an FBI agent, testified he went to the crime scene where the body was discovered, and found a cigarette butt about half a mile onto the logging road, from the

-27-

intersection of Huff Creek Road, about 20 or 25 yards west of the scuffle area. 19 RR 100-101, 107.

**Deborah Ganaway,** an FBI agent in the Houston office, testified she was involved in collecting evidence in Jasper. 19 RR 113-14. Some of the evidence was forwarded to Houston and some on to the FBI lab in Washington, D.C.

Agent Ganaway was personally involved in the search of the crime scene roads and transported some of the evidence to Houston. 19 RR 118-119. She also took swabs which were introduced into evidence. 19 RR 121-122. There were also stains in the road which were tested for blood. 19 RR 123. Some tests were made in the area in front of a church where some of the body was recovered. 19 RR 127. There was a large blood stain at the entrance of the logging road. 19 RR 128.

**Ginny Simms,** another FBI technician, received much of the evidence from Agent Ganaway, and sent it to the FBI lab in Washington, D.C. 19 RR 137-38.

**Joan Pace,** an employee of Christus Jasper Memorial Hospital, took blood samples from the three defendants, King, Brewer, and Berry and gave them to Det. Frame. 19 RR 143-7. **Pat Dietz,** an FBI agent, transported the blood samples from Det. Frame to the FBI lab in Washington, D.C.. 19 RR 150-52. **Lucy Restivo,** an FBI agent in Beaumont, received the blood samples from Agent Dietz, and packaged it for Federal Express delivery to the FBI lab in Washington, D.C. 19 RR 157-58. Some clothing and tire tracks were also sent to Washington, D.C. 19 RR 159, 161.

**Richard Skinner,** an administrator for the Jefferson County Morgue, drew blood

-28-

samples from the victim, James Byrd, Jr. 19 RR 164. **Robert Fortune,** an FBI agent, received the blood samples from Mr. Skinner and handed them to agent Sutton who was flying to Washington, D.C. 19 RR 167-68. **Mike Sutton,** an FBI agent, transported evidence from Jasper to Houston. 19 RR 169-70. He personally accompanied five large boxes of evidence when they were flown to Washington, D.C. 19 RR 171. He also received blood, bile and urine samples of the victim from agent Fortune. 19 RR 173. This was unusual treatment of the evidence. 19 RR 175.

**Larry Pulliam,** testified he was a Jasper County deputy sheriff at the time of the crime, and several days after the murder, received a call from a Mr. Chenyworth at the Jasper Twin Cinema. 19 RR 179, 185. Behind the movie screen Pulliam found a car tire and rim and some cases of beer. 19 RR 180. Shawn Berry was the manager of the cinema. 19 RR 182.

**Carrie Orien,** a forensic examiner in the trace evidence unit of the FBI lab in Washington, D.C., testified that he received the evidence that was sent Federal Express from Houston, and also the items personally transported by agent Sutton. 19 RR 199. Orien testified that the shoes of the victim had a fiber on them that was similar in composition and makeup to that of the floor mat in Berry's truck. 19 RR 204-08. Other carpet samples that were submitted, such as from the Jasper Twin Cinema and the victim's apartment were excluded as possible sources of the fibers. 19 RR 209. The fibers on the victim's shoes did not match the lining of the truck or the carpet at the victim's apartment. 19 RR 214.

**Sandra Wersema,** an FBI forensic examiner, testified she has experience in footwear

-29-

and shoe print identification.  19 RR 218.  She testified that two cast impressions of tire tracks taken from the logging road matched the two rear tires of Berry's vehicle.  19 RR 224-25.  Another cast made from near a cemetery where the body of the victim was found corresponded in tread design and tread dimension to a Versa Trac tire from Berry's truck.  19 RR 226.  Another photo from an impression made near Tommy Faulk's house matched the Defender SRX+4 tire recovered from Berry's vehicle.  19 RR 230.  Other photographs of tire tracks taken from the crime scene matched the tires from the truck.  19 RR 231-232.

Wersema testified that there are over 1400 different designs of passenger car and pickup truck tires.  19 RR 232.  The witness' opinion was that Berry's truck was on Huff Creek Road and the logging road and made the impressions, as there were four different designs that matched those on the truck.  19 RR 233.

She also testified that she took impressions from two different pairs of Rugged Outback sandals, one size 10 and one size 9 and a half.  19 RR 235.  She testified that either one of the sandals could have made the impression in the sand at the crime scene.  19 RR 236-37.  She had no idea how many tires or sandals of the brands in question were manufactured.  19 RR 239-40.

**Tommy Faulk,** a beekeeper who was friends with King and Berry, and who had known Brewer for a few weeks, testified that on June 5, 1998, the three defendants were at his house partying.  19 RR 243.  The trio spent the night at Faulk's house.  19 RR 243-44.  On the afternoon or evening of Saturday, June 6, 1998, King and Brewer were at a barbeque in Burkeville with Faulk, Faulk's sister, and other individuals.  19 RR 244-45.  King

-30-

allegedly became angry because a black friend of Faulk's, Doyle Grace, showed up at the gathering. 19 RR 245. King and Brewer left in King's girlfriend's car. 19 RR 245. The last time Faulk saw King on Saturday was about 3PM on June 6. 19 RR 246. He saw King at about 5 or 6PM on June 7th, when they pulled up to the side of his trailer. 19 RR 247. King was with Brewer, and they talked about ten minutes. 19 RR 248. The woods were about 50 feet from Faulk's trailer. 19 RR 249.

Faulk had known King for about 15 years, but the first time King began expressing racial views was after he was released from prison. 19 RR 250. He didn't have these feelings before he went to prison. 19 RR 252. King showed him the tattoo of the "hanging black man." 19 RR 250. This witness was never asked about joining the Confederate Knights of America. 19 RR 257. According to this witness, King may have had some problems with blacks when he was sixteen years old. 19 RR 261.

The next day, some police officers searched the house, and found a large chain in a hole in the woods behind his house. 19 RR 251. The hole was used in playing paint ball, and King and others had played this game with Faulk. 19 RR 260, 263-64.

**Norm Townsend,** an FBI agent, testified that he searched the area near Mr. Faulk's trailer on June 8, 1998. 19 RR 266. Shawn Berry directed the officers to a location behind the trailer where there was a depression in the ground, and underneath some plywood, there was a logging chain. 19 RR 267-68.

**Gregory Bishea, Ph. D,** a forensic expert with the FBI in Washington, D.C., testified that one of the tires had a liquid inside it that may have been "fix a flat" similar to the can

found at the crime scene. 19 RR 273. One of the victim's shirts may have had some paint from a spray paint can of black paint that was also found at the scene. 19 RR 274-75. The materials were consistent but the witness could not say beyond a reasonable doubt that they were a match. 19 RR 278.

**Frank Samuel Baechtel, Ph. D.,** a forensic examiner in the DNA analysis unit of the FBI laboratory, was tendered as an expert in the field of forensic serology or forensic DNA profiling. 20 RR 7.[34] Baechtel testified that two tests are used for DNA: RFLP and PCR. 20 RR 11. The RFLP method has the greatest ability to distinguish one person from another through their DNA but it requires a substantial amount of non-degraded DNA. 20 RR 11. PCR-based testing has more limited power to distinguish one person from another but it requires much less material and a lower degree of degradation. 20 RR 12. PCR-based testing was used in this case. 20 RR 13.

Dr. Baechtel received three vials of blood labeled Bill King, Shawn Berry, and Russell Brewer. 20 RR 19. A stain on a Polo boot found in the suspect's apartment matched the DNA profile of James Byrd and a test on a stain on the other boot was inconclusive. 20 RR 21-22. A stain on one of the Outback sandals, State's exhibit 45, matched that of James Byrd. 20 RR 23.[35] Tests on the other sandal were inconclusive. 20 RR 23. The stain that

---

[34] This was the first time any witness had been so qualified as an expert in this trial.

[35] As noted earlier in FBI agent Brewer's testimony, State's exhibit 45 were size 10 sandals. 18 RR 61. However, it was determined that King's shoe size was nine and a half, and similar-brand size nine and a half sandals were also found in the apartment (State's exhibit 55 and 56). 18 RR 61. FBI agent Brewer earlier testified that King's shoe size was nine and a half and Berry's was a size nine. 18 RR 111, 127. Brewer was a size seven. 18 RR 112. Lewis

matched was found on the top of the strap that comes across the foot. 20 RR 24. Tests were

also done on some Nike tennis shoes found in the apartment, and there was also a match for

the victim's DNA. 20 RR 24-25. The probability of finding someone at random in the black

population that would match the DNA found on the sandal and tennis shoes was one in 5700.

20 RR 25. The victim's blood also matched stains found on Polo jeans and on a shirt. 20 RR

27. There were DNA patterns for more than one person on the cigarette butts found at the

scene of the crime. 20 RR 27. As to one butt, the major contributor was Berry and the minor

contributor was not Brewer, King or Byrd. 20 RR 28. As to the other cigarette butt, State's

exhibit 412, King is the major contributor, and Byrd cannot be excluded as a minor

contributor but could also not be so confirmed. 20 RR 28. One way this could have

happened is if one person smoked the cigarette and another person took a puff off it. 20 RR

44-45. Another cigarette butt matches Brewer's DNA. 20 RR 30. The probabilities of

finding a Caucasian with the same DNA as the defendants' profiles ranged from one in

3500 to one in 7800, with the exception of Berry's cigarette butt match, which was one in

24,000. 20 RR 30-31. DNA from the beer bottle found at the scene of the crime matched

Brewer's DNA. 20 RR 33. Swabs taken from the Huff Creek Road matched the victim's

blood. 20 RR 33. Blood samples taken from underneath the truck matched the victim's to

a probability of one in 300,000. 20 RR 34. Blood from one of the rear tires and a tire in the

truck matched that of Byrd to one chance in 5700. 20 RR 35-36. No blood or human tissue

---

Berry, who frequented the apartment and had clothing there, was a size ten. 18 RR 124, 131.
The size 10 sandals with the victim's blood on them, the major incriminating evidence against
the petitioner, were not even King's size, and this was never challenged by the defense.

were found on the chain.  20 RR 49.

The DNA on a cigarette could last a long time without degrading to where it could not be matched.  20 RR 45-47.  There are new testing procedures that are more accurate than those used in this case.  20 RR 50-51.

In all, King's DNA was found on only two items of all the evidence submitted: a cigarette butt which contained King's primary and possibly Byrd's DNA, and a sandal which matched Byrd's blood.  20 RR 55.[36]  That amount of blood was a sixteenth of an inch wide.  20 RR 56-57.

**Abdul Rashid,** worked at a convenience store, the Shop N Carry, near the Cedar Tree Restaurant.  20 RR 58.  On the day before Byrd was murdered, King, Brewer and Lewis Berry were in the store.  20 RR 59.  A week before the murder, Lewis was driving a red Cherokee and he and Brewer came into the store along with a girl.  20 RR 59.  Rashid asked King if Brewer was his brother and before King could reply, Brewer called Rashid a motherfucker and said "We have some tattoos." 20 RR 60.  Brewer was very drunk and King was helping him take his money out of his pocket.  20 RR 60.  They bought some Marlboro cigarettes and they said they were going to Galveston for a party.  20 RR 61.

On the Saturday night King was killed, about 9 or 10 PM, King came in again.  20 RR

---

[36]   The defense never told the jury that the sandal on which the blood stain was found was size ten (Exhibit 45) whereas King had a size nine and a half shoe size and the victim's DNA was not on those sandals.  (*see* previous footnote).  Nor was the cigarette with King's DNA on it ever conclusively found to have the victim's DNA on it, and it is undisputed that King rode in the truck, and thus could have left cigarettes in the ashtray that were later spilled at the so-called "fight scene."  King was known to smoke in Berry's truck. *See, e.g.,* 20 RR 164.  Thus, neither piece of evidence places petitioner at the scene of the crime.

62.  He was walking and asked for a pack of cigarettes.  20 RR 62.  Rashid asked him about

the party in Galveston, and they talked about five minutes and then King left after buying a

box of Marlboro Red  cigarettes.  20 RR 62-63.

Lewis Berry, Shawn Berry's brother, came in the store "all the time."  20 RR 64.

Rashid had earlier given an affidavit that stated the Marlboro cigarettes were bought on June

26, 1998.  20 RR 65.  King was always nice to Rashid when he came into the store.  20 RR

68.

**Christina Smith,** age 17, testified that she worked at the Jasper Twin Cinema in the

summer of 1998.  20 RR 70.  Shawn Berry was the manager of the cinema and he ran it on

the weekends.  20 RR 71.  On the night of the murder, Smith was working at the cinema with

Shawn Berry, and she arrived at work around 6 PM and left around midnight.  20 RR 72.

Shawn Berry left around 7:30 PM that night and said he was going to Newton to pick up his

girlfriend Christie, her baby Montana, and Bill King's girlfriend Kylie. 20 RR 73.  Shawn

Berry returned with them around 8:30 PM. 20 RR 74.  They stayed to watch the movie, and

it was over around 10:50 PM. 20 RR 74.  Christie, Kylie and baby Montana left in Berry's

car, and Shawn stayed at the theater.  20 RR 75.

Around 12:15 AM Smith and Shawn Berry were closing down the movie and asked

if Smith could take him home, as he didn't have a car.  20 RR 76.  Smith dropped him off at

his apartment around 12:30 AM.  Shawn Berry was wearing Polo boots, Polo jeans and a

long blue sleeve jean denim shirt, similar to the items in evidence.  20 RR 77.

The next day, she arrived for work at the movie at around 6PM and King, Kylie, and

-35-

Brewer were at the theater. 20 RR 79. The truck was in the parking lot jacked up, and King said Shawn Berry had gone to get a tire for the truck. 20 RR 79. About five minutes later, Shawn Berry arrived at the theater with Christie. 20 RR 81. They changed the tire and then Shawn left in the truck to take King and Russell Brewer to the apartment. 20 RR 81. Shawn Berry left the theater about 7 PM with King and Brewer. 20 RR 82. They came back around 8 PM and then Lewis Berry and his girlfriend Courtney Miller arrived at the theater. 20 RR 83. King and Brewer left with Miller and Lewis Berry. 20 RR 83. Shawn Berry was arrested about 8:45 PM in the parking lot across from the theater. 20 RR 83.

According to Ms. Smith, Shawn Berry was the one who drove the truck the most. 20 RR 84. Smith had never heard King talk bad about black people and he was always polite. 20 RR 85-86. Shawn Berry smoked Marlboro Lights and his girlfriend was Christie Marcontell. 20 RR 86.

**Heather Hough,** age 16, testified she lived in Roganville, Texas, and met King four or five times at the movie theater in Jasper. 20 RR 114. According to Hough, King showed her his tattoo and said "See my little nigger man hanging from a tree." 20 RR 115. Shawn Berry introduced her to King. 20 RR 116.

**Judith Lee Hancock,** a reporter for the Dallas Morning News, testified she received a letter from King dated November 12, 1998. 20 RR 119. In the letter, he wrote that Shawn Berry had inherited a small tract of land adjacent to the "tram road" which he (Berry) visited frequently. 20 RR 120. King states that he, along with Russell Brewer and Lewis Berry had borrowed Shawn Berry's truck to commute to an out-of-town land clearing job every day.

-36-

20 RR 120. King wrote that his cigarette lighter had been misplaced a week or so before his arrest. 20 RR 121.

In the letter, King gave his version of what happened that night. He said they had been drinking beer while riding up and down rural roads adjacent to Highway 255 off Highway 63, looking for a woman's house, and Berry began to run over mailboxes and stop signs due to his negligence in driving. 20 RR 122. Berry drove erratically and took a chain from the back of the truck and wrapped it around a mailbox and dragged it. 20 RR 122. While driving home, they passed a black man whom Shawn Berry recognized as someone he had befriended in the Jasper County Jail and whom he identified as "Byrd." 20 RR 123. According to Berry, Byrd had supplied him with steroids. 20 RR 123. Berry stopped the truck, approached the man and said Byrd was going to join them as he had business with him, and Byrd climbed into the back of the truck. 20 RR 123. They went to a convenience store and Shawn Berry asked to borrow money from Brewer. 20 RR 124. Berry asked if King and Brewer could sit in the back of the truck so that he could discuss the purchase of more steroids from Byrd. 20 RR 124. Once they arrived, Shawn Berry informed King and Brewer that he was leaving so that he could take Byrd to get the steroids. 20 RR 125. Brewer and King filled a small cooler with six or eight beers for Berry and Byrd, and then King went to the truck to retrieve his wallet and cigarettes. 20 RR 125. He was unable to find his cigarettes and went back to the apartment to call his ex-girlfriend. 20 RR 125.

**Lewis Berry,** age 25, and brother of Shawn Berry, testified he worked in Jasper for Nolan Field Services. 20 RR 128. He met King through Tommy Faulk and socialized with

-37-

him. 20 RR 128. He also lived at the Timbers Apartments with King and his brother. 20 RR 128. At the time of the murder, Lewis, his brother Shawn, and King were living in the apartment, and Brewer was visiting. 20 RR 129.

A few days before the murder, Lewis Berry went into the woods with King and Brewer to clear some land. 20 RR 129. They worked on the job for three days. 20 RR 130. A tire had a puncture and they changed it with one that was in the back of Shawn Berry's truck. 20 RR 131. The chain was used to pull out trees or stumps. 20 RR 132. The replacement tire was not full and he used some "Fix A Flat" on it. 20 RR 132.

The apartment was shared by all three or four of them. 20 RR 134. The bedroom was King's. 20 RR 134. Lewis had some things in a closet. 20 RR 135. The Polo boots were Shawn's. The sandals belonged to King and Shawn Berry. 20 RR 135. They were just alike but half a size different. 20 RR 136. The white shoes with "L.B." on them were Brewer's. 20 RR 136. Lewis Berry testified that he owned only one pair of sandals, the ones he brought to trial. 20 RR 136.[37] Exhibit 44 and 45, the size ten sandals, would "probably" be King's. 20 RR 136-37. Exhibit 55 and 56, the size nine and a half sandals, would be Shawn Berry's. 20 RR 137. The sandals were bought at the same time by Shawn Berry and Bill King. 20 RR 137. The white shoes with "L.B." on them were not Lewis Berry's. 20 RR 137. Lewis Berry testified he wears between a ten and a half and an eleven size shoe. 20

---

[37] This assertion was not challenged by the defense.

-38-

RR 138.[38]  He could not fit his foot into the white shoes.  20 RR 138.[39]  Lawrence Brewer

wore those shoes.  20 RR 138.

The day before the murder, Lewis Berry was hanging around Jasper with his girlfriend

and then he went to a friend's house in Burkeville.  20 RR 139.  The friend was a black man

named Gracie.  20 RR 140.  King and Lawrence Russell Brewer came to the house but didn't

come in.  20 RR 141.  They didn't want to come in to a black person's house, and they got

mad and left.  20 RR 141.  King and Brewer's attitude upset Lewis and he left and went to

King's apartment to talk to him.  20 RR 142.  When Lewis arrived, Brewer and Patrick

Viator were there.  20 RR 142.  Lewis and King got into an argument about the incident at

Burkeville.  20 RR 143.  King did not want to be around black people.  20 RR 143.  He

would put down black people and Lewis had seen King's tattoos, including one of a black

man hanging from a tree, which he called "My little hanging nigger."  20 RR 144.

King told Lewis he was going to have to leave, and so he and his girlfriend Courtney

left with Patrick Viator who asked for a ride to Tommy Faulk's house.  Viator was dropped

off at Faulk's house and Courtney and Lewis rode around for awhile.  Around midnight they

went back to Faulk's house and sat in the parking lot, and then around 1 AM he went in to

Faulk's house.  20 RR 146.  Faulk was not there but he called from Burkeville around 1 AM

or 2 AM to make sure there wasn't a party going on at his place.  20 RR 146.  Patrick Viator

---

[38]  But earlier, FBI agent Brewer had testified that "we took a picture of Mr. Berry's foot,
Lewis Berry's foot.  It was a size 10.  This picture shows a size ten foot..."  18 RR 124.
Incredibly, Mr. King's attorneys never brought out this discrepancy.

[39]  Not surprisingly, since Brewer was a size seven.  18 RR 112.

was also at the house and Lewis fell asleep on the couch while watching TV. 20 RR 147.

Lewis Berry woke up the next day; his girlfriend showed up and he left around noon. 20 RR 147.   Lewis stated he remembered the cigarette lighter with "Possum" on it from that Saturday before the murder at King's apartment.  20 RR 148.  It was lost a week or so prior to the murder but it was found and returned to King by Russell Brewer.  20 RR 149.  King had it on that Saturday.  20 RR 149.

Lewis saw King on Sunday when he went by the movie theater.  20 RR 151.  Lewis went out to the lake and then asked Shawn Berry and King and Brewer if they wanted to play volleyball and they did. 20 RR 151.   They went to Mott and Diane Hough's house in Roganville and played volleyball.  20 RR 152. King seemed normal, maybe a little quieter than usual.  20 RR 161. Brewer did not play as his foot sore.  20 RR 152.

Lewis testified he had never been convicted of a felony but had been charged with public intoxication.  20 RR 153.  He stated that he has black friends and that he is not a member of a racial organization.  20 RR 154.  Lewis did not know that his brother Shawn was buying steroids although Shawn  was interested in weight lifting.  20 RR 154.  Lewis denied any involvement in the murder.  20 RR 156.

Lewis denied that he owned  any property in the Huff Creek Road area, but his sister does.  20 RR 162.  Shawn Berry was familiar with the logging road.  20 RR 163.

King never talked to him about joining the Confederate Knights of America or any other racist organization, nor did he hear King try to convince anyone else to join.  20 RR 164. King was known to smoke in Berry's truck.  20 RR 164.  King's attitude was different